ED RICE, PLAINTIFF v. WILLIAM RIGSBY, DEFENDANT. DONALD STINES, INTERVENOR, AND BILL ROBERTS, CHAIRMAN OF THE BOARD OF COUNTY COMMISSIONERS OF MADISON COUNTY; HILLIARD TEAGUE, REGISTER OF DEEDS OF SAID COUNTY, AND E. Y. PONDER, SHERIFF OF SAID COUNTY, ADDITIONAL INTERVENORS.

AND

CHARLES DAVIS, BY HIS NEXT FRIEND, ROBERT ALLEN, PLAINTIFF v. WILLIAM RIGSBY, DEFENDANT. DONALD STINES, INTERVENOR, AND BILL ROBERTS, CHAIRMAN OF THE BOARD OF COUNTY COMMISSIONERS OF MADISON COUNTY, HILLIARD TEAGUE, REGISTER OF DEEDS OF SAID COUNTY, AND E. Y. PONDER, SHERIFF OF SAID COUNTY, ADDITIONAL INTERVENORS.

(Filed 14 June 1963.)

1. Statutes § 4—

Constitutional questions are of great importance, and therefore a person attacking the constitutionality of a statute must address his objections in clear and direct language to a specific article, section and clause of the State or Federal Constitution, and further it is not the

practice of the courts to adjudicate merely that a statute contravenes the State or Federal Constitution, but the courts ordinarily will point out specifically the constitutional provisions violated.

**2. Appeal and Error § 2—**

Where the lower court holds the statute attacked by defendant to be unconstitutional, the Supreme Court, in the exercise of its supervisory jurisdiction over the inferior courts, may consider the constitutional questions notwithstanding that defendant failed properly to present them in the lower court, but even so the Supreme Court will ordinarily consider only the specific constitutional questions discussed in the brief. Constitution of North Carolina, Art. IV, § 8.

**3. Statutes § 2;   Jury § 3—**

Chapter 359 of the Session Laws of 1955, amending G.S. 9-1 by providing for the selection of jurors in Madison County by a jury commissioner appointed by the resident judge, is not a statute dealing with the establishment of a court inferior to the Superior Court or any other subject designated in Article II, § 29, of the State Constitution, and therefore the fact that the statute is a local act does not render it unconstitutional under this section.

**4. Statutes § 7—**

Where a statute is amended, all portions of the original act which are not in conflict with the provisions of the amendment remain in force with the same meaning and effect that they had before the amendment. G.S. 12-4.

**5. Jury § 3—**

The fact that the act amending G.S. 9-1 provides that the jury commissioner of Madison County should select persons "who are known to be of good moral character and are known to have sufficient intelligence to serve" instead of providing for the selection of persons "who are of good moral character and have sufficient intelligence to serve" does not render the amendment unconstitutional as leaving an arbitrary decision to the jury commissioner as to the persons to be selected, the distinction being a mere exercise in semantics.

**6. Same;   Constitutional Law §§ 19, 24—   Act providing jury commissioner for Madison County held constitutional.**

Chapter 359 of the Session Laws of 1955, amending G.S. 9-1, requires the jury commissioner of Madison County to comply with provisions of G.S. 9-2 in respect to putting the names on the jury list in the box, and rquires him to comply with the requirements of G.S. 9-3 in respect to the manner of drawing the panel for the term from the box, and therefore the local act does not contravene Section I of the Fourteenth Amendment to the Federal Constitution or Sections 7, 17, and 19 of Article I of the Constitution of North Carolina, since the act does not discriminate in the selection of jurors because of race, color, or sex, or bestow upon any person exclusive emoluments or privileges or deny to any person the right to trial by fair and impartial jury.

**7. Constitutional Law § 24—**

The words "the law of the land" as used in § 17, Art. I, of the State Constitution are equivalent to the words "due process of law" as used in § 1 of the Fourteenth Amendment to the Federal Constitution.

**8. Public Officers § 5;   Appeal and Error § 1;   Jury § 3—**

Where the trial court dismisses the panel of jurors, the questions whether the jury commissioner in selecting the panel was disqualified because he had vacated the office of jury commissioner by accepting another public office, and whether the jury commissioner had failed to observe the alleged mandatory requirements of the statute in drawing the jury panel, become academic since this particular panel is *functus officio*.

**9. Constitutional Law § 24—**

A fair jury in jury cases and an impartial judge in all cases are basic to due process of law.

**10. Same;   Jury § 3—**

Where an act imposes the duty upon the resident judge to appoint a properly qualified person as jury commissioner of a county, the duty devolves upon the resident judge to appoint a duly qualified person who will discharge his duties in substantial compliance with the statute and to instruct him as to his duties under the act and to see that his appointee performs his duties so that there may be trials on the merits by fair and impartial juries in jury cases in the county.

APPEAL by plaintiff Ed Rice and by Donald Stines, Intervenor, and appeal by plaintiff Charles Davis, by his next friend Robert Allen, and by Donald Stines, Intervenor, from *Riddle, S. J.*, 4 February 1963 Civil Session of MADISON.

Civil action by plaintiff Ed Rice to recover damages for personal injuries allegedly caused by the actionable negligence of defendant William Rigsby in the operation of his automobile, plaintiff being a passenger therein.

Defendant William Rigsby in his answer denied negligence, and, *inter alia*, pleaded conditionally contributory negligence of plaintiff as a bar to recovery.

Plaintiff Charles Davis, by his next friend Robert Allen, instituted a similar action against defendant Rigsby. In the *Davis* case defendant Rigsby filed a similar answer as in the *Rice* case.

At 10 December 1962 Regular Civil Session of Madison, Riddle, S.J., entered an order consolidating these two cases for trial, and setting them as the first cases for trial at the next session of Madison County superior court.

When these two cases were called for trial at 4 February 1963 Civil Session, defendant Rigsby challenged the array of jurors returned by the sheriff to serve at that session of court on the following grounds:

(1) Chapter 358, 1955 Session Laws of North Carolina, providing for the selection of jurors by a jury commissioner in Madison County and for the appointment of said commissioner by the resident judge, is unconstitutional; and (2) the array of jurors returned by the sheriff to serve at that session of court was improperly drawn and not a legally constituted array of jurors, in that the panel had been selected and drawn by one Donald Stines, who was not in fact the jury commissioner for Madison County. Judge Riddle heard the challenge to the array of jurors upon the testimony of Donald Stines, who was subpoenaed by defendant Rigsby, and after argument of counsel, entered one order wherein he found the following facts:

Donald Stines was appointed jury commissioner for Madison County, pursuant to Chapter 358, 1955 Session Laws of North Carolina, took the oath of office required by the statute in May 1955, and has served continuously under this appointment to the present time. About three years ago Stines, while serving as jury commissioner, was appointed to and took the oath of office as a member of the Walnut School Board, which is a part of Madison County Public School System. He served on such school board until the Walnut and Marshall Schools were consolidated, and since such consolidation he has served as a member of the consolidated school board, and was so serving when the panel of jurors for this session of court was drawn. Stines has not preserved the list of jurors whose names are contained in the jury boxes, and has not revised the jury list every two years. Chapter 358, 1955 Session Laws of North Carolina, makes no provisions for the qualifications of person to be appointed jury commissioner, for the qualifications of persons whose names are to be placed in the jury box, for safeguarding the names in the jury box, and for the manner of drawing names from the jury box and the number to be drawn.

Upon the facts found by him Judge Riddle drew the following conclusions of law:

One.    Chapter 358, 1955 Session Laws of North Carolina, is in contravention of the provisions of the Constitutions of the United States and of the State of North Carolina.

Two.    When Donald Stines accepted office as a member of the Walnut School Board, he immediately vacated the office of jury commissioner for Madison County, because both are public offices.

Three.    The provisions of Chapter 358, 1955 Sessions Laws of North Carolina, in respect to the preserving of a jury list and the revising of the list are mandatory, and Stines' failure to comply with these statutory requirements makes the jury panel drawn for this session of court unlawful.

Whereupon, Judge Riddle adjudged and decreed that the panel of jurors returned by the sheriff was not lawfully constituted, that Chapter 358, 1955 Session Laws, was unconstitutional, and dismissed the panel of jurors.

From this order both plaintiffs appealed to the Supreme Court.

On 13 February 1963 J. Frank Huskins, resident judge of Madison County, entered an order allowing Donald Stines' petition to intervene in these two cases, to file exceptions to Judge Riddle's order of 4 February 1963, and to appeal to the Supreme Court. Donald Stines has a number of assignments of error in the record, and has appealed to the Supreme Court.

On 13 February 1963 Judge Huskins entered an order allowing the petition of Bill Roberts, Chairman of the Board of County Commissioners of Madison County, Hilliard Teague, Register of Deeds of Madison County, and E. Y. Ponder, Sheriff of Madison County, to become parties and intervene in these two cases that they may take such action as they are advised with reference to Judge Riddle's order of 4 February 1963. Mr. Bill Roberts, Mr. Hilliard Teague, and Sheriff E. Y. Ponder have no assignments of error in the record, and have not appealed.

*A. E. Leake for plaintiffs, appellants.*

*A. E. Leake and William J. Cocke for intervenor Donald Stines, appellant.*

*Marshburn and Huff by Joseph B. Huff, and Williams, Williams and Morris by William C. Morris, Jr., for defendant appellee.*

*Uzzell and Dumont by T. A. Uzzell for intervenors Bill Roberts, Hilliard Teague and E. Y. Ponder, appellees.*

PARKER, J. Both plaintiffs and the intervenor Donald Stines assign as error Judge Riddle's conclusion of law in his order that Chapter 358, 1955 Session Laws of North Carolina, providing for the selection of jurors by a jury commissioner in Madison County, is in contravention of the Constitutions of the United States and of the State of North Carolina, and his adjudication in his order that this statute is unconstitutional.

William Rigsby is defendant in two actions pending in Madison County which were consolidated for the purposes of trial, in which plaintiffs seek to recover from him damages for personal injuries allegedly caused by his actionable negligence. When these two cases were called for trial at 4 February 1963 Civil Session of Madison County Superior Court, he challenged the array of jurors summoned to

attend that session of court as jurymen, on the ground that the jury panel was drawn from a jury list in the jury box prepared by a jury commissioner in Madison County pursuant to the provisions of the above-named statute, and that this statute is unconstitutional. There is nothing in the record to show that Rigsby pointed out to the trial judge the specific constitutional provision or provisions, either federal or state, that he contends is violated by this statute: he merely contended it is unconstitutional.

"One who alleges that a statute is unconstitutional must ordinarily point out the specific constitutional provision that is violated by it." 16 C.J.S., Constitutional Law, p. 336, where a legion of cases is cited from many jurisdictions to support the text.

Constitutional questions are of great importance and should not be presented in uncertain form. In *Gradilone v. Superior Court,* 79 R.I. 256, 87 A. 2d 497, the Court said:

"Upon examination of the record sought to be reviewed we are of the opinion that the constitutionality of P. L. 1948, chap. 1986, sec. 2, is not before us since it was not properly raised on the record in the superior court. We have previously held that a party attempting to raise the question of the constitutionality of a statute has the duty to make his objections *on the record* in clear and direct language, stating separately each specific article, section and clause in federal or state Constitutions that is allegedly violated. *Creditors' Service Corp. v. Cummings,* 57 R.I. 291, 190 A. 2; *Haigh v. State Board of Hairdressing,* 74 R.I. 106, 58 A. 2d 925. Since that was not done *on the record sought to be rereviewed here,* we cannot now consider the question of constitutionality brought before us for the first time by the instant petition."

This Court said in *Hudson v. R.R.,* 242 N.C. 650, 667, 89 S.E. 2d 441, 453: "Suffice it to say, we will not undertake to determine whether an Act of Congress is invalid because violative of the Constitution of the United States except on a ground definitely drawn into focus by plaintiffs' pleadings."

However, in the exercise of the constitutional power vested in the Supreme Court "to issue any remedial writs necessary to give it a general supervision and control over the proceedings of the inferior courts," (North Carolina Constitution, Article IV, sec. 8), we have decided to overlook defendant Rigsby's failure to designate the specific constitutional provisions that he contends the Act violates, and to consider the question even though the procedure prescribed by the rules of

practice as necessary to present such question has not been followed (*Products Corp. v. Chestnutt,* 252 N.C. 269, 113 S.E. 2d 587), because Judge Riddle held the Act unconstitutional without specifying the specific constitutional provision or provisions that the Act violated, thereby rendering a decision of vast public importance concernng the proper administration of justice in Madison County, and because counsel have so fully presented their arguments and authorities in respect to the constitutionality or unconstitutionality of this Act in their briefs (*Gorham v. Robinson,* 57 R.I. 1, 186 A. 832). Our leniency in this instance, however, is not to be taken as a precedent.

It is not after the practice of the courts to adjudicate merely that a statute contravenes the provisions of the Constitutions of the United States and of the State of North Carolina without specifying which constitutional provisions are violated. "In any event, the court will ordinarily inquire into the constitutonality of a statute only to the extent required by the case before it, and will not formulate a rule broader than that necessitated by the precise situation in question." 16 C.J.S., Constitutional Law, pp. 321-22.

In *United States v. Spector,* 343 U.S. 169, 96 L. Ed. 863, the Court said: "But when a single, naked question of constitutionality is presented, we do not search for new and different constitutional questions. Rather we refrain from passing on the constitutionality of a phase of a statute until a stage has been reached where the decision of the precise constitutional issue is necessary." See *United States v. Petrillo,* 332 U.S. 1, 91 L. Ed. 1877.

In *Simmons v. Simmons,* 186 Ind. 575, 116 N.E. 49, the Supreme Court of Indiana said: "A person who assails an act of the Legislature on the ground that it is unconstitutional must point out the particular provision of the Constitution which it is claimed the act violated. Courts will not search the Constitutions to find authority to overthrow a legislative enactment." To the same effect *Haun v. State,* 183 Ind. 153, 108 N.E. 519; *Clark v. Beamish,* 313 Pa. 56, 169, A. 130.

Defendant Rigsby contends in his brief that the statute here challenged violates sections 7, 17, and 19 of Article I, and section 29 of Article II of the North Carolina Constitution, and section 1 of the Fourteenth Amendment to the United States Constitution. Defendant states in his brief: "Article I, section 13 [of the State Constitution] is not directly involved, but it is important." We shall consider only the specific constitutional provisions that Rigsby in his brief contends the statute violates. We shall not *sua sponte* search for new and different constitutional questions, which are not raised by Rigsby in his brief.

Chapter 358, 1955 Session Laws of North Carolina, is entitled: AN ACT AMENDING CHAPTER 9 OF THE GENERAL STATUTES OF NORTH CAROLINA, AND CHAPTER 1122, SESSION LAWS OF NORTH CAROLINA OF 1951, SO AS TO PROVIDE FOR THE SELECTION OF JURORS BY A JURY COMMISSIONER IN MADISON COUNTY AND FOR THE APPOINTMENT OF SAID COMMISSIONER BY THE RESIDENT JUDGE. This statute, except when summarized, reads:

"The General Assembly of North Carolina do enact:

"Section 1. That G.S. 9-1, as the same appears in Volume 1B of the General Statutes, be and the same is amended by adding at the end thereof the following:

" 'Provided that in Madison County there shall be created the office of jury commissioner for said county. The Resident Judge of the Superior Court of the judicial district which includes said county shall have the authority, and it shall be his duty, to make all appointments to said office and to fill all vacancies arising therein. Immediately after the passage of this Act, said judge shall appoint a jury commissioner who shall serve for four years and until his successor is appointed and qualified. All successors to the office of jury commissioner thereafter appointed under the provisions of this Act shall be appointed by the said resident judge and shall serve at the pleasure of said judge. Every such appointment shall be certified by the resident judge to the Clerk of the Superior Court, who shall enter the same on the minutes of the court. The jury commissioner, before entering upon the discharge of his duties, shall take an oath or affirmation before some official authorized to administer oaths that he will honestly, without favor or prejudice, perform the duties of jury commissioner during his term of office.

" 'It shall be the duty of the jury commissioner to prepare the jury list prior to the first Monday in July, 1955, and every two years thereafter. A list of the names thus selected by the jury commissioner shall be made out by the jury commissioner and shall constitute the jury list of the county and shall be preserved as such. The jury list shall consist only of those persons, not exempt by law from jury service, who are residents of the county, over twenty-one years of age, and who are known to be of good moral character and are known to have sufficient intelligence to serve as members of grand and petit juries. The names for the

jury list shall be selected by the jury commissioner from any and all sources of information deemed by him to be reliable.'

"Sec. 2. The said jury commissioner when appointed and qualified shall have vested in him all the powers, duties and authority heretofore generally exercised throughout North Carolina by the boards of county commissioners under the provisions of Chapter 9 of the General Statutes, and in addition thereto all those powers, duties and authority heretofore exercised and vested in the Madison County jury commission under the provisions of Chapter 1122, Session Laws of 1951, and the said jury commissioner shall have full and complete control over the jury box or boxes of Madison County and over the drawing of jurors, both grand and petit."

"Sec. 3, which we summarize, makes provision for the payment of compensation for services of the jury commissioner and for payment for services of clerical assistance for the jury commissioner as deemed necessary by the county commissioners, to be paid from the general fund of Madison County upon certificate of the resident judge.

"Sec. 4. This Act shall apply to Madison County only.

"Sec. 5. All laws and clauses of laws in conflict with the provisions of this Act are hereby repealed."

Rigsby contends that the challenged statute offends against the provisions of section 29, Article II of the State Constitution in that it is the enactment of a local, private or special act by the repeal or partial repeal of a general law. The challenged statute does not deal with any of the subjects designated concerning which this constitutional section inhibits the enactment of local, private or special acts, S. v. Chestnutt, 241 N.C. 401, 85 S.E. 2d 297, even as it was before the last general election on 6 November 1962, for it is clear beyond peradventure the challenged statute did not establish, or undertake to establish, a court inferior to the superior court. S. v. Norman, 237 N.C. 205, 74 S.E. 2d 602; S. v. Horne, 191 N.C. 375, 131 S.E. 753. At the last general election by a majority vote of the qualified voters of the State, this constitutional section was amended by striking from Article II, section 29 thereof the words "relating to the establishment of courts inferior to the Superior Court; relating to the appointment of justices of the peace;" which follow immediately the word "resolution" in the former constitutional provision. This contention is without merit.

G.S. 9-1 is amended by adding at the end thereof Chapter 358, 1955 Session Laws of North Carolina. All portions of G.S. 9-1, not in conflict with the provisions of Chapter 358, 1955 Session Laws of North Carolina, remain in force, with the same meaning and effect they had before the amendment. G.S. 12-4; *Hoke v. Greyhound Corp.*, 226 N.C. 332, 38 S.E. 2d 105; *S. v. Moon*, 178 N.C. 715, 100 S.E. 614; *Nichols v. Edenton*, 125 N.C. 13, 34 S.E. 71; 82 C.J.S., Statutes, p. 903.

G.S. 9-1 provides in effect that the board of county commissioners for the several counties or the jury commissions or such other legally constituted body as may in the respective counties be charged by law with the duty of drawing names of persons for jury service, at the times of their regular meetings, and every two years thereafter, shall cause their clerks to lay before them the tax returns for the preceding year for their county, and a list of names of persons who do not appear upon the tax lists, who are residents of the county and over twenty-one years of age, from which lists the board of county commissioners or such jury commissions shall select the names of such persons who reside in the county who are of good moral character and have sufficient intelligence to serve as jurors. A list of the names thus selected by the board of county commissioners or such jury commissions shall be made out by the clerk of the board of county commissioners or such jury commissions and shall constitute the jury list of the county and shall be preserved as such. The clerk of the board of county commissioners or such jury commissions, in making out the list of names to be laid before the board of county commissioners or such jury commissions, may secure such lists from such sources of information as deemed reliable, which will provide the names of the persons of the county above twenty-one years of age residing within the county qualified for jury duty. There shall be excluded from said lists all those persons who have been convicted of any crime involving moral turpitude or who have been adjudged to be *non compos mentis.*

Chapter 358, 1955 Session Laws of North Carolina, changes G.S. 9-1 by providing that the jury list shall be prepared by a jury commissioner to be appointed by the resident judge, who serves at the judge's pleasure. This Act in section 3 provides that the county commissioners of Madison County may employ such clerical assistance for the jury commissioner as they may deem necessary and set the compensation of such assistant or assistants. This Act does not repeal the provisions of G.S. 9-1 to the effect that the jury commissioner in preparing the jury list every two years after the first Monday in July 1955 shall cause his clerk to lay before him the tax returns for the preceding year for Madison County, and a list of the names of persons who do not ap-

pear upon the tax list, who are residents of the county and over twenty-one years of age. The qualifications of persons to be selected for jury service as set forth in the challenged Act are practically identical with the qualifications of persons to be selected for jury service as set forth in G.S. 9-1.

Defendant Rigsby contends that G.S. 9-1 provides that those selected for the jury box shall be persons "who are of good moral character and have sufficient intelligence to serve" as jurors, that the challenged Act provides for the selection only of those persons "who are known to be of good moral character and are known to have sufficient intelligence to serve" as jurors, and that the challenged Act leaves an arbitrary decision to the jury commissioner, without any fixed rule, so that he can leave out of the jury box many persons on the pretext that they are not known by him to be of good moral character and to have sufficient intelligence to serve as jurors. Such persons as are entrusted with the power and duty by virtue of G.S. 9-1 to select the names of persons to be placed in the jury box are derelict in their duty, if they select the names of persons to be placed in the jury box who are not known by them to be of good moral character, and are not known by them to have sufficient intelligence to serve as jurors. By reason of such dereliction of duty the names of persons who are felons, are of bad moral character, and lack sufficient intelligence to serve as jurors have been placed at times in the jury box. Defendant Rigsby's contention is an ingenious exercise in semantics, but it is not convincing.

The challenged Act in section 2 provides that the "jury commissioner when appointed and qualified shall have vested in him all the powers, *duties* and authority heretofore generally exercised throughout North Carolina by the boards of county commissioners under the provisions of Chapter 9 of the General Statutes." (Emphasis supplied.) That requires him to comply with the provisions of G.S. 9-2 in respect to putting the names on the jury list in the box and to complying with the requirements of G.S. 9-3 in respect to the manner of drawing the panel for the term from the box. However, this Act repeals the provision of G.S. 9-2 in respect to the keys to the jury box and provides that the jury commissioner shall have full and complete control over the jury box of Madison County.

At common law the panel of jurors was selected by the sheriff from his list of freeholders. Most of the American states, if not all, have long since taken the selection of jury lists out of the hands of the sheriff and placed it in the hands of other officers or bodies, such as jury commissions, the selectmen of the towns, town supervisors, county

commissioners, county courts, or certain officers constituting a board for the specific purpose. 31 Am. Jur., Jury, sec. 75, p. 71. In the federal courts (not applicable to the District of Columbia), Title 28, sec. 1864, U.S.C.A., provides that the jury box shall from time to time be refilled by the clerk of court, or his deputy, and a jury commissioner, appointed by the court. This statute provides qualifications for the commissioner. Title 28, sec. 751, U.S.C.A., provides that the clerk of each district court shall reside in the district for which he is appointed, with an exception of the clerk of two district courts, that the clerk may appoint, with the approval of the court, necessary deputies, etc., but this statute does not provide any qualifications for the deputy. See exhaustive and scholarly opinion in *United States v. Brookman,* 1 F. 2d 528, which holds that the requirements of the federal statute as to the qualifications for the jury commissioner to be appointed by the district judge are advisory, and not mandatory. Chapter 711, 1959 Session Laws of North Carolina, authorizes the appointment of a jury commissioner for Beaufort County. "It is competent for the Legislature at any time to change the general law previously in force as to how the jury list shall be selected, as long as no constitutional right is abrogated or impaired." 50 C.J.S., Juries, p. 876.

The Court speaking by Ervin, J., now United States Senator, in *Miller v. State,* 237 N.C. 29, 47, 74 S.E. 2d 513, 525-526, said:

> "A state may prescribe such relevant qualifications as it deems proper for jurors without offending the Fourteenth Amendment to the United States Constitution as long as it takes care that no discrimination in respect to jury service is made against any class of citizens solely because of their race. Hence, a state statute may restrict eligibility for jury service in a county to adult citizens and residents who are of good moral character and have sufficient intelligence to serve as members of grand and petit juries, and confer upon county commissioners the discretionary power to select for jury service in the county without regard to their race or color those adult citizens and residents who in their judgment possess these qualifications. [Citing voluminous authority from the United States Supreme Court.] The North Carolina statute does not contravene the Fourteenth Amendment. It prescribes relevant qualifications for jurymen, and does not discriminate against any persons because of race or color. G.S. 9-1."

The challenged Act prescribes relevant qualifications for jurors, and does not discriminate against any person because of race, color or sex. The challenged Act does not contravene section 1 of the Fourteenth

Amendment to the United States Constitution or section 17, Article I of the North Carolina Constitution. The words "the law of the land" as used in section 17, Article I of the North Carolina Constitution are equivalent to the words "due process of law" required by section 1 of the Fourteenth Amendment to the United States Constitution. *S. v. Hedgebeth,* 228 N.C. 259, 45 S.E. 2d 563.

It is manifest that the challenged Act is not repugnant to the provisions of section 7, Article I of the North Carolina Constitution, because it bestows upon no person or set of persons exclusive or separate emoluments or privileges from the community, and that it is not repugnant to section 19, Article I of the North Carolina Constitution, in that it denies no person the right of trial by a fair and impartial jury and excludes no person from jury service on account of sex.

Judge Riddle's conclusions of law that when Donald Stines accepted office as a member of the Walnut School Board, he immediately vacated the office of jury commissioner for Madison County, because both are public offices, and that the provisions of the Act in respect to the preserving of a jury list and the revising of the list are mandatory, and Stines' failure to comply with these statutory requirements makes the jury panel drawn for this session of court unlawful, now present questions for mere academic discussion, because if Judge Riddle's above conclusions of law are erroneous *in toto,* this panel of jurors cannot be recalled to serve as jurors at any future session of court. It is not after the manner of appellate courts to decide moot or academic questions. *Walker v. Moss,* 246 N.C. 196, 97 S.E. 2d 836; *In re Will of Johnson,* 233 N.C. 576, 65 S.E. 2d 16. The challenged Act here does not have the constitutional infirmity of Chapter 177, Public-Local Laws 1931, providing that the chairman of the board of education, the chairman of the board of health, and the superintendent of public schools of Madison County should serve as the jury commission of the county, thereby violating section 7 of Article XIV of the North Carolina Constitution. *Brigman v. Baley,* 213 N.C. 119, 195 S.E. 617.

The Act here imposes upon the resident judge the duty of appointing the jury commissioner. The act further provides the jury commissioner shall serve for four years, and until his successor is appointed and qualified, and that he shall serve at the judge's pleasure. It appears from Stines' testimony that he was appointed in 1955, and has not since been reappointed. It further appears from Stines' testimony that he lacks knowledge of the requirements of the Act as to his duties as jury commissioner. The Act requires the jury commissioner to pre-

pare the jury list prior to the first Monday in July 1955 and every two years thereafter.

A fair jury in jury cases, and an impartial judge in all cases are a basic requirement of due process. *Ponder v. Davis*, 233 N.C. 699, 65 S.E. 2d 356; *Re Murchison*, 349 U.S. 133, 99 L. Ed. 942.

The challenged Act imposes upon the resident judge, and upon him alone, the duty of appointing a properly qualified person as jury commissioner, who will discharge his duties in substantial compliance with the requirements of the Act. Doubtless, the able resident judge, when this opinion is certified down, will appoint as jury commissioner a person whose integrity and qualifications no fair-minded person can question, a person whom no one can challenge as holding two offices, and a person who, after being instructed by him as to his duties as jury commissioner under the Act and as to safeguarding the jury box, will discharge his duties as jury commissioner in substantial compliance with the requirements of the Act, and that the resident judge will see that his appointee performs this duty, to the end that there may be trials on the merits by fair juries in jury cases in Madison County, and that appeals like the one here, except on the constitutional question, will be obviated. It is a truism that justice delayed is frequently justice denied. Wolfe, J., in *Haslam v. Morrison*, 113 Utah 14, 190 P. 2d 520, said: "The purity and integrity of the judicial process ought to be protected against any taint of suspicion to the end that the public and litigants may have the highest confidence in the integrity and fairness of the courts."

The intervenors E. Y. Ponder, Hilliard Teague, and Bill Roberts in their brief take the position of the plaintiffs that the challenged act is constitutional. They further contend that if it should be held that the Act is unconstitutional, then Chapter 1122, Session Laws of North Carolina of 1951, is in full force and effect and that these intervenors constitute the lawful jury commission for Madison County.

The Act challenged here is not repugnant to the specific sections of the Federal and State Constitutions as set forth and contended by defendant Rigsby in his brief. The order of the lower court holding the Act unconstitutional as in contravention of the Constitutions of the United States and of the State of North Carolina is

Reversed.