MICHAEL J. BEGLEY, BISHOP OF THE ROMAN CATHOLIC DIOCESE OF CHARLOTTE, NORTH CAROLINA v. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 8026SC477

(Filed 3 February 1981)

**1. Master and Servant § 101— unemployment compensation taxes — employee of church or religious organization**

The enactment in 1977 of G.S. 96-8(5)(q) and G.S. 96-8(6)(j), which deleted a previous exemption from unemployment tax liability for nonprofit elementary and secondary schools, did not change the effect of the exemption in G.S. 96-8(6) (k)(15) for persons performing services in the employ of a church organization operated primarily for religious purposes.

**2. Master and Servant § 101— employees of Roman Catholic schools — exemption from unemployment tax statutes**

Employees of schools operated by the Roman Catholic Church are exempt from the unemployment tax provisions of G.S. Ch. 96 pursuant to G.S. 96-8(6)(k) (15).

**3. Master and Servant § 106— unemployment taxes — action to determine applicability — U. S. Secretary of Labor not necessary party**

The U. S. Secretary of Labor was not a necessary party to an action to determine whether the unemployment tax statutes applied to employees of schools operated by the Roman Catholic Church in N. C. because State unemployment laws must follow federal statutes in order for the State to gain a credit against the federal unemployment tax and thus obtain funds to operate State employment offices and because the U. S. Secretary of Labor has interpreted the federal statutes to include parochial and parish schools within the scope of the federal unemployment tax provisions, since the present action in no way involves an interpretation of the Federal Unemployment Tax Act.

**4. Interest § 1; Master and Servant § 106— unemployment compensation taxes paid under protest — prejudgment interest on payments refunded**

The trial court could properly award prejudgment interest on protested unemployment compensation tax payments recovered in an action against the Employment Security Commission brought under G.S. 96-10(f).

Judge WHICHARD dissenting.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 4 March 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals on 11 November 1980.

This is a civil action wherein plaintiff seeks to recover under G.S. § 96-10(f) payments made under protest for unemployment tax assessments rendered against him by defendant. Plaintiff filed a

verified complaint alleging, among other things, that plaintiff is "the duly appointed and acting Bishop of the Roman Catholic Diocese of Charlotte, North Carolina (hereinafter called "Diocese"), pursuant to the laws of the Roman Catholic Church;" that the law and rules of the Roman Catholic Church (hereinafter "Church") vest in plaintiff the title to all the property of the Diocese "including without limitation all the Church's schools . . .;" that the schools operated in the Diocese "are, and always have been, operated primarily for religious purposes;" that the schools are supervised by plaintiff through a superintendent appointed by plaintiff; that the schools "are controlled *and* principally supported" by the Church and the Diocese; that the unemployment tax provisions of Chapter 96 of the General Statutes include within the definition of "employment" services performed by employees of non-profit elementary and secondary schools, while excluding from the definition, and thus from coverage, "services performed in the employ of a church or convention or association of churches or an organization which is operated primarily for religious purposes and which is operated, supervised, controlled or primarily supported by a church or convention or association of churches" [*See* G.S. § 96-8(6)k.15.(i)]; that plaintiff made under protest the contributions required under G.S. § 96-9(a)(1) for employers subject to the provisions of Chapter 96; that defendant has failed to make a refund of the payment even though the ninety-day period required by G.S. § 96-10(f) for seeking refunds of payments under protest has expired; that plaintiff recover the protested payment and costs; and that the court "find and declare that the Employment Security Law of the State of North Carolina as set out in Chapter 96 of the General Statutes does not apply to employees of Roman Catholic schools and the Diocese." Plaintiff made a separate claim for relief based upon "impermissible interference with religion by the State" in violation of the First and Fourteenth Amendments of the United States Constitution and Article I, Section 13 of the North Carolina Constitution.

Defendant filed answer on 14 November 1978, alleging that the complaint failed to state a claim upon which relief could be granted; that the court lacked jurisdiction of the subject matter; and that plaintiff failed to allege any actions on the part of defendant interfering with the Church's or its members' "substantive religious beliefs or manner or form of worship, or internal operation" of the Diocese. Defendant further alleged that since state unemployment laws must follow the federal statutes in order to

gain a credit against the federal unemployment tax, and thus obtain funds to operate state employment offices, and since U.S. Secretary of Labor F. Ray Marshall had interpreted the federal statute corresponding to G.S. § 96-8(6) to include church schools within its coverage, Marshall is united in interest with defendant and thus a necessary and indispensable party to the action. Defendant admitted the allegations as to plaintiff's authority, and that the payments had been made under protest, but denied that the schools were operated primarily for religious purposes, that the schools were supervised by a superintendent appointed by plaintiff, and that the schools were controlled and principally supported by the Church.

Plaintiff moved for summary judgment on 9 March 1979, in support of which plaintiff offered his complaint and an affidavit dated 1 March 1979. In the affidavit, plaintiff stated among other things that the parochial or parish school "is considered part of the Church and has an essentially religious mission"; that the pastor "exercises 'ordinary' authority over the parish in spiritual and temporal matters;" and that he is responsible for the "operation, administration, financing and spiritual guidance of the parish and the parish school" and is thus "responsible for the employment of all parish personnel, including the lay teachers in the parish school"; that the Diocese has organized an "Office of Christian Education" and the Diocese's Department of Education has developed comprehensive standards and guidelines for the operation of the Church schools; that "[t]he very purpose of the Roman Catholic Schools of the Diocese of Charlotte is to teach Roman Catholic Doctrine;" that "[i]n all cases the parish assumes the ultimate financial responsibility for the school"; and that the parishes provide many other supporting functions for the Church schools, such as access for religious exercises. Attached to the affidavit were copies of the standards and guidelines heretofore discussed. The record before the court below also contained several letters from the Internal Revenue Service indicating the Service's belief that Church schools were exempt from liability under the federal unemployment tax provisions.

On 29 March 1979, defendant moved to dismiss pursuant to G.S. § 1A-1, Rule 12(b)(6), or in the alternative for summary judgment. Defendant made a further motion on that date to join Secretary of Labor Marshall as a necessary and indispensable party or to

dismiss the action for failure to join a necessary party. In support of the latter motion, defendant offered a letter from the Secretary to Bishop Kelly of the United States Catholic Conference indicating the Secretary's interpretation of the federal statute, and a U.S. Department of Labor policy directive based on this interpretation.

From an order denying defendant's motion for summary judgment, motion to dismiss, and motion to join a necessary party, and allowing plaintiff's motion for summary judgment on the ground that Chapter 96 of the General Statutes does not apply to Church employees or to employees of the Diocesean schools, defendant appealed.

*Robert D. Potter, for the plaintiff appellee.*

*Employment Security Commission Chief Counsel Howard G. Doyle, and Staff Attorneys Thomas S. Whitaker and C. Coleman Billingsley, Jr., for the defendant appellant.*

HEDRICK, Judge.

**[1]** Defendant contends, based on his first assignment of error, that the court erred as a matter of law in granting plaintiff's motion for summary judgment and in denying defendant's motion for summary judgment. Defendant argues that since plaintiff did not deny operating non-profit elementary and secondary schools, and since the General Assembly amended G.S. § 96-8 effective 1 January 1978 to delete an exemption from unemployment tax coverage for non-profit elementary and secondary schools, in order to come into compliance with the federal statute, all church-related elementary and secondary schools in the State, including the schools operated by plaintiff, are now subject to the unemployment tax provisions of Chapter 96 of the General Statutes. We disagree. While the 1978 amendments did serve to subject non-profit elementary and secondary schools to the provisions of the Employment Security Law (Chapter 96 of the General Statutes), *see* G.S. §§ 96-8(5)(q); 96-8 (6)(j), these amendments left unchanged the subsection of G.S. § 96-8 that is most relevant to this inquiry. That subsection, G.S. § 96-8(6)k. in pertinent part provides:

The term "employment" shall not include:

. . .

> 15. Services performed (i) in the employ of a church or convention or association of churches, or an organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches; . . .

*See also* 26 U.S.C. § 3309(b)(1).

Where the language of a statute is clear and unambiguous there is no room for judicial construction and the courts must give it its plain and definite meaning, *Williams v. Williams*, 299 N.C. 174, 261 S.E.2d 849 (1980); *State ex rel. Utilities Commission v. Southern Bell Telephone and Telegraph Co.*, 288 N.C. 201, 217 S.E.2d 543 (1975); *Fogle v. Gaston County Board of Education*, 29 N.C. App. 423, 224 S.E.2d 677 (1976), and the courts are without power to interpolate, or superimpose, provisions and limitations not contained therein. *State v. Camp*, 286 N.C. 148, 209 S.E.2d 754 (1974); *Jackson v. Stanwood Corp.*, 38 N.C. App. 479, 248 S.E.2d 576 (1978); *Swain County v. Sheppard*, 35 N.C. App. 391, 241 S.E.2d 525 (1978). In addition, when a statute is amended, all portions of the original act which are not in conflict with the provisions of the amendment remain in force with the same meaning and effect that they had before the amendment. G.S. § 12-4; *Rice v. Rigsby*, 259 N.C. 506, 131 S.E.2d 469 (1963).

In the present case, the cited subsection is, in our view, unmistakably clear in its language. The subsection provides an exemption from unemployment tax liability for all persons rendering services as an employee of a church or group of churches, and for all persons employed by organizations operated primarily for religious purposes and "operated, supervised, controlled, or principally supported" by a church or group of churches, without making any distinction between secular and non-secular workers or the tasks that they perform in such employment. In light of the unambiguous statutory language, we cannot, as defendant would have us do, read into the subsection a limitation that the exemption applies only to Roman Catholic Church employees who are *not* involved in educational activities. Since the General Assembly left this subsection completely unchanged when it deleted the previous exemption for non-profit elementary and secondary schools, we must presume that the subsection should be given the same meaning and effect as before the amendment. If the Legislature had intended to remove

Church school employees from the coverage of the subsection, it would have done so. Defendant's first assignment of error is therefore without merit.

[2] We are also of the view, in response to defendant's fourth assignment of error, that the cited subsection was properly applied to the facts of this case. The schools in question are considered an important part of the Roman Catholic Church, and the Diocese of Charlotte has adopted comprehensive guidelines for the operation and administration of the schools. Church officials, namely the pastors, are responsible for the operation, administration, and *employment* of the schools, and the individual parishes provide whatever financial support is necessary to their continued operation. It follows, then, that the Church schools are themselves part of the Church, and thus the employees of the schools must be considered employees of the Church as well. Although it is not necessary for our determination, we also believe that the complaint, affidavit, and supporting documents offered by plaintiff indicate that the Church schools are operated primarily for religious purposes and are operated, supervised, controlled, *and* principally supported by the Church. The Church schools are therefore exempt from the coverage of the state unemployment tax law, and this assignment of error has no merit.

[3] Defendant next contends, based upon his second assignment of error, that the court erred in refusing to join the United States Secretary of Labor as a necessary party to the action. Defendant bases his argument on the fact that the Employment Security Commission finances its public employment through federal grants, and that the Commission obtains these funds only after the state unemployment tax law is certified by the United States Secretary of Labor as being in compliance with the federal unemployment tax law, thus allowing the state to take a credit against the federal tax. Since the U.S. Secretary of Labor has interpreted the federal statute, to which Chapter 96 of the General Statutes corresponds, to include parochial and parish schools within the scope of the federal unemployment tax provisions, defendant argues, the Commission must subject parochial and parish schools to the state unemployment tax law in order to keep its certification and its funding. Therefore, defendant asserts, as the Secretary's interpretation has prompted defendant to seek contributions from plaintiff, leading to this litigation, complete relief cannot be afforded without

the joinder of the Secretary. We disagree.

G.S. § 1A-1, Rule 19(b) provides:

> The Court may determine any claim before it when it can
> do so without prejudice to the rights of any party or to the
> rights of others not before the court; but when a complete
> determination of such claim cannot be made without the
> presence of other parties, the court shall order such other
> parties summoned to appear in the action.

A "necessary" party is one whose presence is required for a com-
plete determination of the claim, *Behr v. Behr*, 46 N.C. App. 694,
266 S.E.2d 393 (1980), and is one whose interest is such that no
decree can be rendered without affecting the party. *Pickelsimer v.
Pickelsimer*, 255 N.C. 408, 121 S.E.2d 586 (1961); *Wall v. Sneed*, 13
N.C. App. 719, 187 S.E.2d 454 (1972). In other words, a "necessary"
party is one whose interest will be directly affected by the outcome
of the litigation. *Equitable Life Assurance Society of United States v.
Basnight*, 234 N.C. 347, 67 S.E.2d 390 (1951).

In the instant case, the U.S. Secretary of Labor was not a
necessary party whose joinder was mandatory, as the Secretary's
interests would not be affected by the outcome of this litigation. The
present action merely involves a determination based upon Chapter
96 of the North Carolina General Statutes, and in no way does it, or
could it, involve an interpretation of the Federal Unemployment
Tax Act (FUTA). Whatever interpretation is finally placed on the
FUTA by the Secretary, it will not depend on what we interpret our
state unemployment law to mean. This assignment of error is with-
out merit.

**[4]** Defendant lastly contends, based on his third assignment of
error, that the court erred in ordering defendant to pay prejudg-
ment interest on the payments refunded to plaintiff. Defendant
argues that an award of interest on a refund is prohibited by G.S. §
96-10(e). We disagree. G.S. § 96-10(e) in pertinent part provides:

> If not later than five years from the last day of the calen-
> dar year with respect to which a payment of any contri-
> butions or interest thereon was made, or one year from
> the date on which such payment was made, whichever
> shall be the later, an employer or employing unit who has
> paid such contributions or interest thereon shall make

Begley v. Employment Security Comm.

application for an adjustment thereof in connection with subsequent contribution payments, or for a refund, and the Commission shall determine that such contributions or any portion thereof was erroneously collected, the Commission shall allow such employer or employing unit to make an adjustment thereof, without interest, in connection with subsequent contribution payments by him, or if such an adjustment cannot be made in the next succeeding calendar quarter after such application for such refund is received, or if said money which constitutes the overpayment has been in the possession of the Commission for six months or more, a cash refund may be made, without interest . . .

This subsection, however, is not applicable to the present situation. Plaintiff is not making an application for a refund with the Commission due to an overpayment or other adjustment to an otherwise proper contribution, as contemplated by G.S. § 96-10(e); rather, plaintiff is suing the Commission pursuant to G.S. § 96-10(f) to recover payments made to the Commission under protest. G.S. § 96-10(f), the applicable statute for our purposes, provides in pertinent part as follows:

Whenever any employer, person, firm or corporation against whom taxes or contributions provided for in this Chapter have been assessed, shall claim to have a valid defense to the enforcement of the tax or contribution so assessed or charged, such employer, person, firm or corporation shall pay the tax or contribution so assessed to the Commission; but if at the time of such payment he shall notify the Commission in writing that the same is paid under protest, such payment shall be without prejudice to any defenses or rights he may have in the premises, and he may, at any time within 30 days after such payment, demand the same in writing from the Commission; and if the same shall not be refunded within ninety days thereafter, he may sue the Commission for the amount so demanded; . . . and if, upon the trial it shall be determined that such tax or contribution or any part thereof was for any reason invalid, excessive, or contrary to the provisions of this Chapter, the amount paid shall be refunded by the Commission accordingly. The remedy

provided by this subsection shall be deemed to be cumulative and in addition to such other remedies as one provided by other subsections of this Chapter.

Unlike subsection (e), subsection (f) contains no reference to refunds being made "without interest," nor do we see any reason why interest should not be allowed on refunds made under subsection (e). The tax assessed against plaintiff has been found by the trial court to be "contrary to the provisions of this Chapter," and thus defendant has had improper possession of plaintiff's funds from the time of payment under protest until judgment. Defendant, in the discretion of the trial court, should not therefore be allowed to benefit from the use of the money rightfully belonging to plaintiff. Under the circumstances, the trial court could properly award prejudgment interest on the amount of the protested payment. *See also Raintree v. City of Charlotte,* 49 N.C. App. 391, 271 S.E. 2d 524 (1980). This assignment of error is without merit.

Since the court did not reach the constitutional questions raised by plaintiff in its determination, we find it unnecessary to address those questions here.

Affirmed.

Judge CLARK concurs in the result.

Judge WHICHARD dissents.

Judge WHICHARD dissenting.

The 1977 General Assembly in Chapter 727 of the 1977 Session Laws amended the Employment Security Law, G.S. 96-1 *et seq.,* to add to the definition of the term "Employer" contained in G.S. 96-8 (5) the following:

q. With respect to employment on and after January 1, 1978, any nonprofit elementary and secondary school.

The same act amended G.S. 96-8(6) by adding a new subdivision j. to read as follows:

j. On and after January 1, 1978, the term "employment" includes services performed in any calendar year by

Begley v. Employment Security Comm.

> employees of nonprofit elementary and secondary schools.

The record indicates, as stated in the majority opinion, that the North Carolina Employment Security Commission

> finances its public employment through federal grants, and that the Commission obtains these funds only after the state unemployment tax law is certified by the United States Secretary of Labor as being in compliance with the federal unemployment tax law, thus allowing the state to take a credit against the federal tax.

It also indicates that the United States Secretary of Labor has interpreted the federal statute which corresponds to Chapter 96 of the North Carolina General Statutes to include parochial and parish schools within the scope of the federal unemployment tax provisions.

I believe the General Assembly, in enacting the 1977 amendments which added subsection q to G.S. 96-8(5) and subsection j to G.S. 96-8(6), was responding to a perceived threat to federal certification and funding of North Carolina's unemployment compensation program; and that because the federal law, as interpreted and applied by the United States Secretary of Labor, appeared to require application of the Employment Security Law to plaintiff and others similarly situated, the General Assembly intended by this amendment to make the law applicable to them. For that reason, I would vote to reverse.

I, like the majority, do not reach the constitutional questions raised by plaintiff because they were not reached by the trial court. My vote is based solely on my interpretation of the intent of the General Assembly in the enactment of G.S. 96-8(5) q and G.S. 96-8 (6) j, applying

> the well-recognized rules of statutory construction that the intent of the legislature controls the interpretation of a statute, . . . and that when there are two acts of the legislature applicable to the same subject, their provisions are to be reconciled if this can be done by fair and reasonable intendment, but, to the extent that they are necessarily repugnant, the *latter shall prevail.*

*Highway Commission v. Hemphill,* 269 N.C. 535, 538-539, 153 S.E. 2d 22, 26 (1967) (emphasis in original).