577 A.2d 940

**Paul A. THOMAS, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 14, 1990.

Decided July 5, 1990.

Paul A. Thomas, pro se.

No appearance for respondent.

Philip J. Murren, with him, Maura K. Quinlan, Ball, Skelly, Murren & Connell, for intervenor, Saint James Church.

Before CRAIG, President Judge, DOYLE, COLINS, PALLADINO, McGINLEY, SMITH, and PELLEGRINI, JJ.

PELLEGRINI, Judge.

Paul A. Thomas (Claimant) was employed for approximately two years as a sixth-grade teacher at St. James School, an elementary school which is owned and operated by St. James Church, a parish of the Roman Catholic Diocese of Greensburg. For reasons not relevant here, Claimant was informed early in the summer of 1989 that his teaching contract was not going to be renewed for the 1990 school year. Claimant filed for unemployment compensation benefits, but because he was employed by a religious

organization, both the Referee and the Unemployment Compensation Board of Review found that he was not entitled to benefits pursuant to Section 4 of the Unemployment Compensation Law. Act of December 5, 1936, P.L. 2897, *as amended*, 43 P.S. § 753. We affirm.[1]

Claimant filed a petition for review to this court, alleging that the Unemployment Compensation Law is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because school teachers that work for public or private entities receive unemployment compensation, while school teachers employed by religious organizations do not. Thus, Claimant alleges that Pennsylvania's Unemployment Compensation Law impermissibly denies benefits to teachers at religious organizations because that group does not constitute a valid classification.

The United States Supreme Court in addressing whether a classification is violative of the Fourteenth Amendment has stated:

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievements of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [Citations omitted.]

*McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

---

**1.** Our scope of review in an appeal from a decision of the Unemployment Compensation Board of Review is limited to determining whether findings of fact are supported by substantial evidence or an error of law has been committed or constitutional rights have been violated. *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987).

■ Unless a classification is inherently suspect, such as those based on race, color, creed or national origin, a classification's validity is tested by assessing whether the classification has some reasonable basis. If the classification has some reasonable basis then "it does not offend the Constitution simply because [it] is not made with mathematical nicety or because, in practice, it results in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citing *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).) .Consequently, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan,* 366 U.S. at 426, 81 S.Ct. at 1105.

■ In order to properly address the issue raised by Thomas, it is necessary to set forth the background behind the enactment of unemployment compensation laws. Pennsylvania's Unemployment Compensation Law and all state unemployment compensation laws are the result of the Federal Unemployment Tax Act, 26 U.S.C. §§ 3301–3311, which was enacted in response to the widespread unemployment that occurred during the depression.[2] The federal act has established a cooperative federal-state program providing benefits to unemployed workers. It has imposed an excise tax on "wages" paid by an "employer" in covered "employment." State unemployment laws mirror the federal act and the interpretation of that legislation. The state laws necessarily conform to the federal scheme in order that the states can obtain credit for contributions to state unemployment funds. In exchange for compliance, a ninety percent credit against the federal tax is allowed for contributions paid to a state unemployment fund. 26 U.S.C. § 3302, § 3304. Unemployment compensation functions in a manner similar to insurance in that the amount of benefits received by the unemployed of a particular organization may differ substantially from the amount the organization previously paid to the fund.

2. Originally, Title IX of the Social Security Act of 1935, 49 Stat. 639.

Prior to 1977, the Federal Unemployment Tax Act and Pennsylvania's Unemployment Compensation Law each contained a blanket exemption for all primary and secondary schools, both public and private. In 1976, the federal act was amended and eliminated the blanket exemption for primary and secondary schools, Act of July 6, 1977, P.L. 41. However, an exemption for certain organizations was retained.[3] A provision consistent with the federal exemption was retained in Section 4 of Pennsylvania's Unemployment Compensation Law:

Service performed in the employ of (i) a church or convention or association of churches or (ii) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches ... 43 P.S. § 753($l$)(4)(8).

The United States Secretary of Labor interpreted the 1976 federal amendment, which narrowed the exemption from federal unemployment tax formerly extended to all primary and secondary schools, to mean that Congress "clearly intended [the amendment] to result in state coverage of church-related schools."[4] In compliance with this interpretation, Pennsylvania and other states began collecting unemployment taxes from church-related schools.

Church-related schools attacked the legislation on the basis that the Secretary's interpretation of the federal amendment was erroneous and that it violated the United States Constitution's First Amendment protections respecting religious freedom. The United States Supreme Court

3. Title 26 U.S.C. § 3309(b) reads in pertinent part:
This section shall not apply to service performed—
(1) in the employ of (A) a church or convention of association of churches, or (B) an organization which is operated primarily for religious purposes and which is operated, supervised, controlled, or principally supported by a church or convention or association of churches.

4. Opinion letter dated April 18, 1978, Secretary of Labor Marshall to Most Reverend Thomas C. Kelly, O.P., General Secretary of United States Catholic Conference quoted in *St. Martin Evangelical,* 451 U.S. at 778, 101 S.Ct. at 2146.

ruled in *St. Martin Evangelical Lutheran Church and Northwestern Academy v. State of South Dakota,* 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981), that Congress did not intend for parochial schools to pay unemployment taxes as a result of the amendments to the Federal Unemployment Tax Act, and accordingly, states were not required to collect the tax. The Supreme Court reached this conclusion without having to consider whether imposition of this tax violated the First Amendment.

Prior to the Supreme Court's *St. Martin* decision, this court, in *Christian School Association of Greater Harrisburg v. Department of Labor and Industry,* 55 Pa.Commonwealth Ct. 555, 423 A.2d 1340 (1980), held that imposition of unemployment tax placed a significant burden on the free exercise of religion, and therefore, was impermissible. We stated:

> In Catholic Bishop of Chicago, [440 U.S. 490 (1979)], the court held that an administrative agency could not assert jurisdiction over an organization if doing so tends to jeopardize the religious freedom of the organization unless there has been a clear expression of intent by the legislature to assert such jurisdiction. In applying this rule of construction here, we note that a determination of whether or not a law unconstitutionally infringes upon the free exercise of religion depends largely upon the degree to which the law imposes a direct burden or a severe but indirect burden upon an individual's ability to practice his religion. *Wisconsin v. Yoder,* 406 U.S. 205 (1972). The burden in the present case appears to be largely indirect, that is, a financial burden rather than a direct restriction on practice, but we believe that the imposition of the unemployment compensation laws on religious schools nevertheless raises serious and sensitive issues of first amendment infringement.

55 Pa.Commonwealth Ct. at 561, 423 A.2d at 1344.

The decisions in *St. Martin, Christian School Associa-*

*tion* and similar cases [5] are not cited mainly for their holdings but to illustrate that religious organizations, and, inferentially, their employees, are to be treated differently for unemployment compensation tax purposes. The Free Exercise Clause and the Establishment Clause of the First Amendment guarantee to individuals and religious organizations freedom from unduly burdensome governmental regulation in the exercise of religious beliefs and from governmental entanglement with religious practice. These constitutional protections mandate that religious activities and religious organizations are to be treated differently by our laws.[6] Therefore, laws which are consistent with these protections classify religious activities and religious organizations for treatment different from others are constitutionally valid.

Claimant here contends that the classifying of employees of religious organizations for different treatment by Pennsylvania's Unemployment Compensation Law is a violation of the Fourteenth Amendment's guarantee to equal protection of the law. Claimant essentially suggests that First Amendment religious freedom protections reflected in the

5. The Supreme Court, in *St. Martin Evangelical,* cited at footnote 10 the following cases where state courts have held that religious organizations were not required to pay unemployment compensation taxes, 451 U.S. at 786, 101 S.Ct. at 2150; *Alabama v. Marshall,* 626 F.2d 366 (C.A.5 1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405; *Lutheran Church–Missouri Synod v. Bowling,* 89 Ill. App.3d 100, 44 Ill.Dec. 404, 411 N.E.2d 526 (1980); *Roman Catholic Church of the Archdiocese of New Orleans v. State,* 387 So.2d 1248 (La.App.1980); *Sant Bani Ashram, Inc. v. New Hampshire Department of Employment Security,* 121 N.H. 74, 426 A.2d 34 (1981); *Begley v. Employment Security Comm'n,* 50 N.C. App 432, 274 S.E.2d 370 (1981); *Grace Lutheran Church v. North Dakota Employment Security Bureau,* 294 N.W.2d 767 (N.D.1980); *Employment Division v. Archdiocese of Portland,* 42 Or.App. 421, 600 P.2d 926 (1979).

6. The United States Supreme Court's most recent discussion as to the extent that the Free Exercise Clause precludes or permits state regulation is contained in *Employment Division, Oregon Department of Human Resources v. Smith,* —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (April 17, 1990). In that case, the Court held that it did not violate the Free Exercise Clause for Oregon not to pay unemployment compensation to American Indians who were discharged as employees at two private drug treatment centers because they had ingested peyote as part of a religious ceremony.

exemption of church-related schools from the payment of unemployment tax conflict with the guarantee due Claimant to equal protection of the law. The Fourteenth Amendment, however, does not bar discrimination where a reasonable basis exists for the classification. The reasonableness of this classification allowing for the disparate treatment of employees of religious organizations stems neither from the goals sought to be achieved by the General Assembly when it set forth the exclusion in Pennsylvania's Unemployment Compensation Law, nor by Congress when it enacted the Federal Unemployment Tax Act from which Pennsylvania of necessity incorporated the exclusion into an unemployment compensation law; this classification is one that was made and mandated by the First Amendment to the United States Constitution.[7]

Once, as here, a classification is determined to be valid, then the courts are not free under the aegis of the Equal Protection Clause to substitute their judgment for the will of the people of the state as expressed in the laws of the popularly elected legislature. *Parham v. Hughes*, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979). Both the General Assembly and Congress have made the legislative judgment to treat religious organizations differently by

7. Even though the validity of a classification based upon being employed by a religious organization emanates from First Amendment protections of religious freedom, Pennsylvania's Unemployment Compensation Law is replete with other exemptions: certain types of agricultural labor, 43 P.S. § 753(*l*)(4)(1); domestic service in a private home, local college club or local chapter of college fraternity or sorority, 43 P.S. § 753(*l*)(4)(2); service in the employ of the United States or instrumentalities of the United States, 43 P.S. § 753(*l*)(4)(6); employment with certain railroads or maritime companies, 43 P.S. § 753(*l*)(4)(9); service by students or spouses of students at colleges and universities, 43 P.S. § 753(*l*)(4)(10)(B); service performed by an instrumentality of a foreign government, 43 P.S. § 753(*l*)(15); service performed as an insurance agent or broker, real estate broker or salesman, investment counsellor or unsalaried correspondent for newspapers, 43 P.S. § 753(*l*)(17).

Similar exclusions can also be found throughout the federal employment law: Employment Retirement Income Security Act, 29 U.S.C. §§ 1002, 1003; Equal Employment Opportunity Act, 42 U.S.C. § 2000e; Occupational Safety and Health Act, 29 U.S.C. § 652; Age Discrimination in Employment Act, 29 U.S.C. § 630; Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101.

excluding them from unemployment compensation taxes. Accordingly, Claimant's equal protection rights have not been violated and the decision of the Unemployment Compensation Board of Review is affirmed.

## ORDER

AND NOW, this 5th day of July, 1990, the decision of the Unemployment Compensation Board of Review is affirmed. COLINS, J., dissents.