IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-164

 Filed: 2 January 2018

Mecklenburg County, No. 14-CVD-2267

ANDREA KIRBY CROWELL, Plaintiff,

 v.

WILLIAM WORRELL CROWELL, Defendant.

 Appeal by plaintiff from judgment entered 15 August 2016 by Judge Christy

T. Mann in Mecklenburg County District Court. Heard in the Court of Appeals 3

October 2017.

 Law Office of Thomas D. Bumgardner, PLLC, by Thomas D. Bumgardner, for
 plaintiff-appellant.

 Hamilton Stephens Steele + Martin, PLLC, by Amy E. Simpson, for defendant-
 appellee.

 BRYANT, Judge.

 Where the trial court had jurisdiction to order plaintiff to sell her separate

property to satisfy a distributive award, order that the transfer of a deed from

plaintiff to a third-party relative be avoided, and distribute marital debts owed by the

parties and where the trial court made sufficient findings of fact to justify its

distributive award, we affirm. However, where the trial court’s award included an

alternative money judgment against a non-party, we vacate that portion of the

judgment.
 CROWELL V. CROWELL

 Opinion of the Court

 Plaintiff Andrea Crowell and defendant William Crowell were married on 11

July 1998. They were legally separated on 3 September 2013 and divorced in April

2015. No children were born of the marriage.

 Prior to the parties’ marriage, defendant was president and shareholder of

several corporations: Inwood Properties, Inc. (“Inwood Properties”); Inwood Land

LLC (“Inwood Land”); Inwood Homes; Inwood Realty Corp.; St. Vrain Valley

Associates LP (“St. Vrain”); Owl’s Head Ranch, LLC; and WWC Valley. In March

2011, Elizabeth Temple, defendant’s daughter from a previous marriage, was named

president of the companies. At the time of trial, the companies were owned and

controlled by defendant, Temple, and defendant’s sons (also from a previous

marriage), with Temple and defendant’s sons holding “the same amount of shares.”1

 After the parties married, they developed a pattern of living beyond their

means. As a result, defendant began to take salaries from his various companies

which were not justified by their revenues, plaintiff and defendant began liquidating

defendant’s separate property, and plaintiff and defendant took out loans against

both parties’ separate property.

 At the time of separation, the marital debt which had been incurred to fund

the parties’ marital lifestyle was significant. Plaintiff and defendant owed money to

almost every company in which defendant maintained an ownership interest,

 1 Defendant owned “a total of 25 percent [of Inwood Properties] between a trust and
individually[.]”

 -2-
 CROWELL V. CROWELL

 Opinion of the Court

including (1) $422,368.00 to Inwood Properties; (2) $258,737.00 to Inwood Land; and

(3) $143,285.00 to St. Vrain. The primary marital asset, the marital residence, was

sold in 2014 after the parties’ separation for $1,075,000.00, which sale produced

$230,657.00 in net proceeds. From these proceeds, plaintiff received a total interim

distribution of $144,794.00 and defendant received $85,863.00.

 At the time of separation, the trial court found that plaintiff’s separate

property included two pieces of real property—14212 Stewart’s Bend Lane and 14228

Stewart’s Bend Lane2—located in Charlotte, North Carolina. On or about 30 May or

1 June 2015, plaintiff transferred 14228 Stewart’s Bend Lane to her son, Gentry

Kirby. At that time, the property had an equity of $100,000.00, and Kirby assumed

the mortgage.

 On 17 February 2014, plaintiff filed a complaint against defendant for

equitable distribution, alimony, and post-separation support. Defendant filed an

answer and included a counterclaim for equitable distribution. The case came on for

trial before the Honorable Christy T. Mann in Mecklenburg County District Court

from 6 to 8 July 2016. At the time of trial, defendant was seventy-six years old and

suffered from memory loss and dementia, and he had also been diagnosed with

Alzheimer’s disease. Defendant did not appear at trial, but his daughter, Temple,

 2 The ownership of both properties is disputed on appeal. The trial court found that plaintiff
owned both properties as her separate property, but on appeal, plaintiff contends both properties were
acquired at some point by CKE, plaintiff’s corporation of which she is the sole owner/member.

 -3-
 CROWELL V. CROWELL

 Opinion of the Court

who is her father’s power of attorney, testified about matters and facts related to

defendant’s assets, debts, income, and expenses. Plaintiff appeared pro se. On 15

August 2016, the trial court entered its equitable distribution judgment and alimony

order. Plaintiff appeals.

 _________________________________________________________

 On appeal, plaintiff contends that the trial court committed reversible error by

(I) entering a judgment affecting title to real property without joining all necessary

parties to the action; (II) entering monetary judgments against a third-party without

joining the third-party to the action; (III & IV) classifying and distributing the debts

of private corporations to a husband and wife without joining the corporations as

parties to the action; (V) creating a distributive award without finding that the

statutory presumption of an in-kind distribution has been rebutted; and (VI) ordering

the liquidation of separate property to satisfy a distributive award.

 In equitable distribution cases, “the standard of review on appeal is whether

there was competent evidence to support the trial court’s findings of fact and whether

its conclusions of law were proper in light of such facts.” Lee v. Lee, 167 N.C. App.

250, 253, 605 S.E.2d 222, 224 (2004) (quoting Shear v. Stevens Bldg. Co., 107 N.C.

App. 154, 160, 418 S.E.2d 841, 845 (1992)).

 Equitable distribution is vested in the discretion of the trial
 court and will not be disturbed absent a clear abuse of that
 discretion. Only a finding that the judgment was
 unsupported by reason and could not have been a result of

 -4-
 CROWELL V. CROWELL

 Opinion of the Court

 competent inquiry, or a finding that the trial judge failed
 to comply with the statute, will establish an abuse of
 discretion.

Wiencek-Adams v. Adams, 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (internal

citations omitted). “A trial court’s findings of fact in an equitable distribution case

are conclusive if supported by any competent evidence.” Fitzgerald v. Fitzgerald, 161

N.C. App. 414, 419, 588 S.E.2d 517, 521 (2003) (citing Mrozek v. Mrozek, 129 N.C.

App. 43, 48, 496 S.E.2d 836, 840 (1998)).

 “[E]quitable distribution is a three-step process; the trial court must (1)

‘determine what is marital [and divisible] property’; (2) ‘find the net value of the

property’; and (3) ‘make an equitable distribution of that property.’ ” Robinson v.

Robinson, 210 N.C. App. 319, 322, 707 S.E.2d 785, 789 (2011) (second alteration in

original) (quoting Beightol v. Beightol, 90 N.C. App. 58, 63, 367 S.E.2d 347, 350

(1988)).

 I

 Plaintiff first argues that the trial court erred in entering a judgment affecting

title to real property—14212 Stewart’s Bend Lane—without joining all necessary

parties to the action. Plaintiff contends that because CKE Properties, Inc. was the

lawful owner of 14212 Stewart’s Bend Lane on the date of separation (“DOS”), the

Mecklenburg County District Court lacked jurisdiction to enter its order affecting

 -5-
 CROWELL V. CROWELL

 Opinion of the Court

said property, and therefore, its valuation and distribution constitutes reversible

error. We disagree.

 In an equitable distribution action, the trial court has authority to distribute

“presently owned” real and personal property acquired during the marriage and

before the date of separation. N.C. Gen. Stat. § 50-20(b)(1) (2015).

 “[W]hen a third party holds legal title to property which is claimed to be

marital property, that third party is a necessary party to the equitable distribution

proceeding, with their participation limited to the issue of the ownership of that

property.” Upchurch v. Upchurch, 122 N.C. App. 172, 176, 468 S.E.2d 61, 63–64

(1996) (emphasis added) (citations omitted). Separate property, on the other hand, is

to be considered by the trial court in making its distribution of marital property. See

Young v. Gum, 185 N.C. App. 642, 648, 649 S.E.2d 469, 474 (2007) (citation omitted)

(noting that the trial court is required to “consider the separate property in making

a distribution of the marital property”).

 In the instant case, the trial court found as fact that this property was

plaintiff’s separate property: “On the DOS, Plaintiff/Wife owned a house and lot

located at 14212 Stewart’s Bend Lane, Charlotte, NC 28277 (“14212 Stewart’s Bend”).

14212 Stewart’s Bend is Wife’s separate property, as stipulated by the parties on the

FPTO [(Final Pretrial Order)]. (FPTO Property Item 11).” In the distribution

portion of its order, the trial court ordered plaintiff to do as follows:

 -6-
 CROWELL V. CROWELL

 Opinion of the Court

 b) . . . 14212 Stewart’s Bend: Within thirty (30) days of
 the date of the execution of this Judgment/Order
 Plaintiff/Wife shall sign a listing agreement with a realtor
 selected by Defendant/Husband and will take all efforts to
 sell 14212 Stewart’s Bend for fair market value.
 Plaintiff/Wife will cooperate with price reductions and
 repair requests recommended by the real estate agent and
 will accept any unconditional offer made within 2% of the
 then asking price. All of the net proceeds shall be paid to
 Defendant/Husband.

 Plaintiff contends that the trial court did not have jurisdiction to enter a

judgment affecting 14212 Stewart’s Bend Lane because it was not owned by her, but

by another legal entity, CKE. In so doing, plaintiff relies on this Court’s opinion in

Nicks v. Nicks, 241 N.C. App. 487, 774 S.E.2d 365, (2015).

 In Nicks, a husband and wife, prior to their separation, implemented an estate

plan consisting of a trust and three LLCs, which eventually became a single-member

LLC, “Entrust.” Id. at 491, 774 S.E.2d at 370. The husband and wife were the only

beneficiaries of the trust, and the husband managed the LLC and had the right to

decide whether to make distributions of profits and assets from the trust. Id. at 491–

92, 774 S.E.2d at 370. In the trial court’s findings of fact, it determined that Entrust

was marital property and ordered that its assets be distributed to the husband, but

that the husband pay the wife a distributive award. Id. at 493–94, 774 S.E.2d at 371.

On appeal, the husband argued the trial court erred in distributing Entrust to him

because neither Entrust, the LLC, nor the trust itself were owned by either of the

 -7-
 CROWELL V. CROWELL

 Opinion of the Court

parties on the date of separation; rather, the trust, not the husband, owned a 100%

interest in Entrust. Id. at 494–95, 774 S.E.2d at 372.

 This Court agreed with the husband’s argument, concluding as follows:

 [T]he Trust—which holds legal title to Entrust—was never
 named as a party to this action. We therefore hold that the
 trial court lacked jurisdiction to order equitable
 distribution of Entrust. See, e.g., Upchurch, 122 N.C. App.
 at 176, 468 S.E.2d at 64 (“Otherwise the trial court would
 not have jurisdiction to enter an order affecting the title to
 that property.”) (citation omitted).

Id. at 496, 774 S.E.2d at 373 (emphasis added). In other words, because the party—

the Trust—which held legal title to the LLC—Entrust—was not named as a party to

the action in Nicks, the trial court lacked jurisdiction to distribute that property

which an unnamed party held legal title to. Id.; see also Dechkovskaia v.

Dechkhovskaia, 232 N.C. App. 350, 352–54, 754 S.E.2d 831, 834–35 (2014) (holding

the trial court had no authority to classify and distribute houses which were titled in

the name of the parties’ minor child without joining the minor child as a party to the

action).

 Plaintiff’s argument in reliance on Nicks ignores the fact that the trial court

did not classify 14212 Stewart’s Bend Lane as marital property and distribute it as

such. See Upchurch, 122 N.C. App. at 176, 468 S.E.2d at 63–64 (“[W]hen a third party

holds legal title to property which is claimed to be marital property, that third party

is a necessary party to the equitable distribution proceeding, with their participation

 -8-
 CROWELL V. CROWELL

 Opinion of the Court

limited to the issue of the ownership of that property.” (emphasis added) (citations

omitted)). Rather, it considered the separate property of plaintiff—CKE and its

assets, including 14212 Stewart’s Bend Lane—in making its distribution of the

marital property, namely, in ordering plaintiff to pay a distributive award to

defendant. See Young, 185 N.C. App. at 648, 649 S.E.2d at 474 (noting that the trial

court is required to “consider the separate property in making a distribution of the

marital property”).

 Even if it is true that there is evidence in the record to indicate that as of the

DOS, CKE was the legal owner of 14212 Stewart’s Bend Lane,3 the trial court’s

classification of this property as plaintiff’s separate property does not constitute

reversible error where it was not distributing the property as part of the marital

estate. See Upchurch, 122 N.C. App. at 176, 468 S.E.2d at 63–64. Cf. Geoghagan v.

Geoghagan, ___ N.C. App. ___, ___, 803 S.E.2d 172, 175–76 (2017) (vacating an

equitable distribution order where the trial court ordered third-party LLCs “to refrain

from taking certain actions without joining them as necessary parties to the

proceedings”). Rather, the trial court was considering plaintiff’s separate property in

distributing the marital estate, specifically considering plaintiff’s ability to pay a

distributive award to defendant. As the “100% Owner” of CKE, which was formed in

 3 The supplement to the record purports to show that on 25 September 2003, 14212 Stewart’s
Bend Lane was transferred from CKE to plaintiff for “zero amount,” and on 12 November 2003, the
property was granted from plaintiff back to CKE.

 -9-
 CROWELL V. CROWELL

 Opinion of the Court

2002 and whose “[o]nly purpose . . . is to own the real estate she purchased through

a 1031 exchange using her separate funds,” the trial court was allowed to consider

CKE’s assets, including 14212 Stewart’s Bend Lane, in ordering plaintiff to sell the

property in order to pay the distributive award. Defendant’s argument is overruled.

 II

 Next, plaintiff contends the trial court erred by entering monetary judgments

against a third-party, namely, plaintiff’s son, Gentry Kirby, without joining him to

the action. Plaintiff contends that because Kirby was the lawful owner of 14228

Stewart’s Bend Lane on the DOS, the trial court lacked jurisdiction to enter a

judgment affecting title to 14228 Stewart’s Bend Lane or to enter an alternative

money judgment against Kirby because defendant did not assert a claim against him

in this action. We agree that the trial court erred in entering an alternative money

judgment against Kirby.

 Defendant contends that although the trial judge did not expressly state in her

ruling that she was applying the factors to be considered in analyzing a transfer

contended to be voidable under the Uniform Fraudulent Transfer Act, N.C. Gen. Stat.

§§ 39-23.1 (2013) et seq.,4 it is nonetheless clear that the facts in this case fall within

 4 Plaintiff transferred 14228 Stewart’s Bend Lane to Kirby on or about 30 May or 1 June 2015.
The version of the Uniform Fraudulent Transfer Act which is currently in effect—the Uniform
Voidable Transfer Act—did not become effective until 1 October 2015. See N.C. Sess. Laws 2015-23, §
1, eff. Oct. 1, 2015. Since then, N.C.G.S. §§ 39-23.1 et seq. have been amended again. See N.C. Sess.
Laws 2017-204, § 3.3(a)–(b), eff. Aug. 3, 2017.

 - 10 -
 CROWELL V. CROWELL

 Opinion of the Court

the statute and the result is that plaintiff’s transfer was fraudulent and thus,

voidable. Defendant also argues that Kirby was not required to be made a party to

this action in order for the trial court’s remedies to be applied because Kirby did not

take the property in good faith or for a reasonably equivalent value. Cf. N.C.G.S. §

39-23.8(a) (2013) (“A transfer or obligation is not voidable under G.S. 39-23.4(a)(1)

against a person that took in good faith and for a reasonably equivalent value or

against any subsequent transferee or obligee.”).

 The Uniform Fraudulent Transfer Act was designed to prevent fraudulent

transfers and allow a creditor to cancel a transfer even after it has been made. See

generally id. §§ 39-23.1 et seq. Specifically, N.C. Gen. Stat. § 39-23.4(a)(1) establishes

as fraudulent any transfer of property that is made with the intent to hinder, delay,

or defraud a creditor. Id. § 39-23.4(a)(1). A “creditor” is defined broadly as “a person

who has a claim.” N.C.G.S. § 39-23.1(4); see Note, Benjamin M. Ellis, Protecting the

Right to Marital Property: Ensuring a Full Equitable Distribution Award with

Fraudulent Conveyance Law, 30 Cardozo L. Rev. 1709, 1712 (2009) (proposing that

“a spouse should be considered a creditor—and thus have recourse to fraudulent

conveyance law—for the limited purpose of setting aside conveyances that would

otherwise prevent the spouse from receiving a full equitable distribution award”).

The remedies available to a creditor include “[a]voidance of the transfer or obligation

to the extent necessary to satisfy the creditor’s claim;” “[a]n attachment . . . against

 - 11 -
 CROWELL V. CROWELL

 Opinion of the Court

the asset transferred”; or “[a]ny other relief the circumstances may require.” N.C.G.S.

§ 39-23.7(1), (2), (3)c.

 A conveyance will be deemed fraudulent and thus void in either of the following

instances:

 If the conveyance is voluntary and made with the actual
 intent upon the part of the grantor to defraud creditors, it
 is void, although this fraudulent intent is not participated
 in by the grantee . . . .

 ....

 . . . If the conveyance is upon a valuable consideration, but
 made with the actual intent to defraud creditors on the
 part of the grantor, participated in by the grantee or of
 which he he [sic] has notice, it is void.

Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 173, 506 S.E.2d 267,

271 (1998) (citation omitted) (quoting Aman v. Walker, 165 N.C. 224, 227, 81 S.E.

162, 164 (1914)).

 In determining intent [of the grantor] under subdivision
 (a)(1) of this section, consideration may be given, among
 other factors, to whether:

 (1) The transfer or obligation was to an insider[5];

 ....

 (3) The transfer or obligation was disclosed or concealed;

 (4) Before the transfer was made or obligation was
 incurred, the debtor had been sued or threatened with suit;

 5“ ‘Insider’ includes: a. If the debtor is an individual, 1. A relative of the debtor . . . .” N.C.G.S.
§ 39-23.1(7)a. (emphasis added).

 - 12 -
 CROWELL V. CROWELL

 Opinion of the Court

 ....

 (12) The debtor made the transfer or incurred the
 obligation without receiving a reasonable equivalent value
 in exchange for the transfer or obligation . . . .

N.C.G.S. § 39-23.4(b).

 At trial, plaintiff, who appeared pro se,6 argued as follows:

 May 30, 2015 I gifted [14228 Stewart’s Bend Lane]
 to [Kirby]. I was going to give it to him anyway. . . . I had
 discussed gifting it earlier. But I gifted it now because it
 was the time to do it, and they will tell you it was because
 I did not want to sell it and split the money. I couldn’t have
 ever sold this this fast, nor did I feel the necessity to kick
 my family out.

Evidence in the record also suggests that defendant was not made privy to this

transfer until after it was accomplished.

 The trial court found as follows regarding the transfer of 14228 Stewart’s Bend

Lane to Kirby:

 74. In 2015, Defendant/Husband asked Plaintiff/Wife to
 sell 14228 Stewart’s Bend so as to eliminate the marital
 debt and distribute the net proceeds between them.
 Plaintiff/Wife refused.

 75. Shortly thereafter, Plaintiff/Wife “gifted” the home to
 her son Gentry Kirby (“Mr. Kirby”), who was well aware of
 this divorce proceedings [sic] and the contentions of the
 parties about the distribution and payment of real property
 and debts. At the time of the gift, 14228 Stewarts Bend [sic]
 was worth $390,000 resulting in a $100,000 “gift” of equity

 6 Plaintiff was represented from 2013 through June 2015. She paid her attorney $227,993.00
for his representation in this case, but her attorney withdrew in June 2015.

 - 13 -
 CROWELL V. CROWELL

 Opinion of the Court

 to Mr. Kirby.

 76. The Court finds that this transfer/gift of valuable real
 property by Plaintiff/Wife to Mr. Kirby constitutes a
 fraudulent transfer to defraud creditors, that Mr. Kirby
 was not a good faith purchaser for value (in an arms’ length
 transaction) and that the home and/or the equity contained
 therein is within this Court to consider in determining the
 equitable distribution of the property and/or the
 distributive award that Plaintiff/Wife may be required to
 pay. Nytco Leasing, Inc. v. Southern Motels, Inc., 40
 N.C.App. 120, 252 S.E.2d 826 (1979); McCanless v.
 Flinchum, 89 N.C. 373 (1883) (when property is sold to a
 family member for less than reasonable value and the
 grantor is unable to pay his debts, the close family
 relationship is strong evidence of fraudulent intent). Mr.
 Kirby does not need to be a party to this lawsuit in order
 for this Court to consider this property and the disposition
 thereof as part of this litigation.

The trial court ordered plaintiff as follows:

 198. . . . The Court finds [plaintiff] has the ability to pay
 the distributive award only as follows:

 ....

 c) 14228 Stewart’s Bend: Plaintiff/Wife can obtain
 a deed to this house back from Mr. Kirby, sell the
 property and distribute the net proceeds to
 Defendant/Husband or she can have Mr. Kirby pay
 to Defendant/Husband $90,000 which represents
 the majority of equity he gained during the
 fraudulent “gift/transfer” to him of this property.

 ....

 6. . . . . Plaintiff/Wife shall pay Defendant/Husband as
 follows:

 - 14 -
 CROWELL V. CROWELL

 Opinion of the Court

 ....

 c) 14228 Stewart’s Bend: Within sixty (60) days of
 the date of the execution of this Judgment/Order
 Plaintiff/Wife shall sign a listing agreement with a
 realtor selected by Defendant/Husband and will
 take all efforts to sell this home for fair market
 value; OR Mr. Kirby will pay to Defendant/Husband
 $90,000 which represents the majority of the equity
 he gained during the fraudulent “gift/transfer” to
 him of this property.

(Emphasis added).

 In the instant case, the record indicates evidence of the following statutory

factors in the transaction between plaintiff and Kirby: (1) the transfer of property to

an insider, her son, see id. § 39-23.4(b)(1); (2) the transfer was concealed from

defendant, see id. § 39-23.4(b)(3); (3) the property was gifted to Kirby on 30 May 2015,

after 17 February 2014, when plaintiff filed her complaint, and also after 29 April

2014, when defendant filed his answer and counterclaim for equitable distribution,

see id. § 39-23.4(4); and (4) plaintiff made the transfer without receiving a reasonable

equivalent value in exchange—the transfer to her son was a “gift,” see id. § 39-

23.4(12). Accordingly, the trial court correctly concluded that the transfer from

plaintiff to Kirby “constitute[d] a fraudulent transfer to defraud creditors, [and] that

Mr. Kirby was not a good faith purchaser for value . . . .” Thus, the trial court also

had jurisdiction to order that the transfer of the deed from plaintiff to Kirby be

avoided.

 - 15 -
 CROWELL V. CROWELL

 Opinion of the Court

 However, with regard to the trial court’s alternative order that “Mr. Kirby pay

to Defendant/Husband $90,000 which represents the majority of equity he gained

during the fraudulent ‘gift/transfer’ to him of th[e] [14228 Stewart’s Bend]

property[,]”we agree with plaintiff that the trial court lacked jurisdiction to enter

such an order against Kirby, a non-party to this action.

 “Pursuant to the Equitable Distribution Act, the trial court is only permitted

to distribute marital and divisible property.” Mugno v. Mugno, 205 N.C. App. 273,

277, 695 S.E.2d 495, 498 (2010) (citations omitted). “An equitable distribution order

is not the proper means to hold . . . a third party[] responsible for a debt owed . . . .”

Id. (holding that the trial court erred by ordering the husband’s corporation, a third

party, to pay funds to the wife in an equitable distribution action where the

corporation was determined to be separate property). Accordingly, we hold the trial

court erred by ordering, even in the alternative, Kirby, a third party, to pay funds to

defendant. Therefore, we vacate in part paragraph 6 of the equitable distribution

order so that it reads as follows:

 6. . . . Plaintiff/Wife shall pay Defendant/Husband as
 follows:

 ....

 c) 14228 Stewart’s Bend: Within sixty (60) days of the
 date of the execution of this Judgment/Order Plaintiff/Wife
 shall sign a listing agreement with a realtor selected by
 Defendant/Husband and will take all efforts to sell this
 home for fair market value; OR Mr. Kirby will pay to

 - 16 -
 CROWELL V. CROWELL

 Opinion of the Court

 Defendant/Husband $90,000 which represents the
 majority of equity he gained during the fraudulent
 “gift/transfer” to him of this property.

 III & IV

 Plaintiff next argues the trial court erred by distributing the debts of private

corporations to a husband and wife without joining the corporations as parties to the

action. Specifically, plaintiff claims the trial court could not enter a judgment in favor

of Temple, Inwood Properties, Inwood Land, or St. Vrain because these entities were

not parties to this case. We disagree.

 As a threshold matter, the trial court did not “enter a money judgment in favor

of Elizabeth Temple”; rather, it distributed certain marital debts to defendant, see

infra, and provided for a mechanism to ensure those marital debts would get paid:

 38. In the event there is any cost or expense associated
 with the sale [of the Constitution Lot, a lot located in Ajiic,
 Mexico and classified as marital property], Plaintiff/Wife
 shall be responsible for the cost or expense. In the event
 that there are any net proceeds from the sale, the entirety
 of the net proceeds will be distributed to
 Defendant/Husband which funds will first be paid to Ms.
 Temple to satisfy Defendant/ Husband’s debt to Ms. Temple
 if it has not yet been paid. If the debt to Ms. Temple has
 already been satisfied, or there are additional net proceeds
 from the sale above the amount needed to satisfy the debt
 to Ms. Temple, the remaining net proceeds shall be paid
 directly to any company to which Defendant/Husband still
 owns [sic] a liability (as provided hereinafter).

 Notably, plaintiff’s argument ignores the trial court’s previous two findings of

fact, which indicate that Temple, as defendant’s power of attorney, testified at trial

 - 17 -
 CROWELL V. CROWELL

 Opinion of the Court

that she would “take on [the] task” of selling the Constitution Lot (a marital property

located in Mexico and distributed to defendant for the purpose of selling it) on behalf

of defendant. The Court further ordered that Temple was authorized “to contract

with real estate agents, notaries, and the like in Mexico to accomplish the sale of the

Constitution Lot at fair market value,” and it is these administrative costs which the

trial court was presumably contemplating in Finding of Fact No. 38 when it referred

to any debts defendant might need to repay to Temple. Plaintiff’s argument on this

point is overruled.

 Plaintiff also challenges distributions to defendant’s various companies.

Plaintiff argues that the trial court was without jurisdiction to enter a judgment in

favor of the various companies and/or that the trial court was without authority to

classify and distribute debt as marital debt, when plaintiff claims defendant alone

misappropriated those funds. We disagree.

 “[F]or the purpose of an equitable distribution, a marital debt is defined as a

debt incurred during the marriage for the joint benefit of the parties.” Geer v. Geer,

84 N.C. App. 471, 475, 353 S.E.2d 427, 429 (1987) (emphasis added) (citation

omitted).

 With regard to these debts—which plaintiff contends are not marital or

divisible property—the trial court found as fact the following:

 13. After Ms. Temple took over as President of Inwood
 Properties and the remaining Companies, she . . . reviewed

 - 18 -
 CROWELL V. CROWELL

 Opinion of the Court

the books of the companies and determined that
Defendant/Husband and Plaintiff/Wife were borrowing
money from the Companies to the detriment of the
Companies themselves and to the other shareholders. After
realizing that the Companies could no longer afford to pay
Defendant/Husband the distributions and salary he was
enjoying or keep loaning Defendant/Husband and
Plaintiff/Wife money to afford their personal expenses they
arranged for the parties to pay the Companies back the
debts that had been accumulated for their own personal
benefit.

14. The Companies continued to loan money to the parties
in the short run, but it is clear that the intent was for these
loans to be repaid and the steady stream of money to be
paid to the parties or for their personal expenses was to be
cut off.

15. The loan amounts are outlined infra, but each of these
loans were made during the parties’ marriage and most of
the money can be traced through deposits directly into the
parties’ personal joint bank account, to pay off personal
credit cards, to purchase real estate in their personal name,
and to expenses that had to be theirs personally.

16. Plaintiff/Wife argued that this was not the case and if
it was she wasn’t aware of the loans or that the money was
being paid to Defendant/Husband (and her) in the form of
a loan that was to be paid back.

17. The Court does not believe Plaintiff/Wife’s position is
credible. This position of doubt is fostered by the fact that
Plaintiff/Wife participated in securing loans in her
individual names [sic] and in Defendant/Husband’s name
(secured by her real property).

....

19. The Court’s concerns about Plaintiff/Wife’s credibility
impacts [sic] all remaining issues in this case.

 - 19 -
 CROWELL V. CROWELL

 Opinion of the Court

(Emphasis added).

 “As fact finder, the trial court is the judge of the credibility of the witnesses

who testify. The trial court determines what weight shall be given to the testimony

and the reasonable inferences to be drawn therefrom.” Cornelius v. Helms, 120 N.C.

App. 172, 175, 461 S.E.2d 338, 340 (1995) (citing Gen. Specialties Co., Inc. v. Nello L.

Teer Co., 41 N.C. App. 273, 275, 254 S.E.2d 658, 660 (1979)). Accordingly, where this

Court defers to the trial court’s finding that plaintiff’s testimony was not credible,

and where competent evidence in the record supports the trial court’s classification

of these debts as marital property, see Miller v. Miller, 97 N.C. App. 77, 81, 387 S.E.2d

181, 184–85 (1990) (citation omitted) (noting that findings are binding on appellate

courts when supported by competent evidence in equitable distribution proceedings),

the trial court did not err in distributing the marital debt. The following evidence in

the record supports the trial court’s classifications of these debts, secured by the

following properties and/or companies, as marital property.

 1. The Strand Debt ($376,900.00).

 At trial, Temple testified as follows: “December 2006, a line of credit was taken

out in [plaintiff’s] name on a company asset called 1300 The Strand. The loan amount

was $377,000. The proceeds -- the total proceeds are deposited into Inwood’s account,

and then $109,990 is deposited into the marital account in a loan form . . . .”

(Emphasis added).

 - 20 -
 CROWELL V. CROWELL

 Opinion of the Court

 2. The Ranch Debts ($82,919.00, $92,927.00, $70,026.00, and $198,768.00).

 Temple testified as follows regarding the loans secured by The Ranch property:

(1) “[I]n 2002 [defendant] . . . gets a loan against [the] ranch, which was previously

completely debt free, for $205,000. And as you can see, $79,290.46 of those proceeds

are directly transferred to the marital account.” (Emphasis added). (2) “Another loan

is taken out against the ranch for [$]250,000, and of these -- and pretty much the

entire proceeds are deposited directly into Inwood’s account. And then shortly after,

two deposits totaling [$]151,080 are deposited into the marital account.” (Emphasis

added). (3) “In May 2005 another loan is taken against [the] . . . ranch for $200,000,

and it’s actually an equity maximizer account, so it can be drawn on whenever they

want, and it’s drawn up to -- $130,000 of draws occurred in 2005.” (Emphasis added).

(4) “[L]ater in 2012 a part of the loan that was taken out on the ranch property back

in 2005 was classified as [defendant’s], as loan -- money loaned to [defendant] and

[plaintiff] because that amount from those loans was actually deposited into their

marital account.” (Emphasis added).

 3. Inwood Properties Debt ($422,368.00).

 Temple read defendant’s contentions into the record regarding the Inwood

Property loan as follows:

 A. (Reads.) “Throughout the marriage husband and wife
 borrowed money from Inwood Properties for their personal
 expenses. This was money husband was not entitled to as
 the officer or shareholder of the company, and as of the date

 - 21 -
 CROWELL V. CROWELL

 Opinion of the Court

 of separation this was the total. After the date of separation
 husband sold his stock in Inwood Properties to satisfy this
 debt in part and will have to pay the tax consequences of
 approximately $80,000 due to the stock repurchase.

 Q. And what is the amount that husband contends is due
 as of September 3, 2013?

 ....

 A. . . . $422,368.

(Emphasis added).

 4. Inwood Land Debt ($258,737.00).

 Temple testified about the Inwood Land Debt as follows:

 Q. . . . And what did Inwood Land do and how was it that
 [defendant] was able to draw money from the Inwood Land
 accounts?

 A. Inwood Land is our operating company in Charlotte. It
 was created as a North Carolina LLC so that we could
 operate our office.

 Q. Okay.

 A. . . . [M]oney is deposited monthly into Inwood Land’s
 account and then we run the operating expenses for the
 Charlotte office out of that, and if there was excess money
 it, was borrowed. [Defendant] later borrowed it from
 Inwood Land and deposited it directly into the marital
 account.

 Q. Okay. And according to the QuickBooks records that
 amount was -- well, read that into the record.

 A. That amount at date of separate [sic] is $258,737.

 - 22 -
 CROWELL V. CROWELL

 Opinion of the Court

(Emphasis added).

 5. St. Vrain Debt ($143,285.00).

 Temple also testified as follows regarding the debt secured by the St. Vrain

company:

 Q. . . . [D]id [defendant] also borrow money from [St. Vrain]
 throughout the years?

 A. Yes. . . . [I]t starts in 2003 with a direct transfer to
 [plaintiff’s] personal account for $3500. And then this
 continues in various forms. And then it’s sometimes paid
 back, but it carries a significant balance until December
 2011 . . . .

 ....

 Q. . . . And what was the amount that was owed to St. Vrain
 on date of separation?

 A. $143,285.

 Lastly, with regard to all of the debts accrued by plaintiff and defendant and

secured against various separately-owned companies and properties, Temple testified

as follows:

 Q. . . . In 2011, when you started having discussions with
 [plaintiff] and [defendant] did you explain to her, . . . that
 [defendant] was borrowing from this company to this
 company to this company to this company to pay their
 living expenses?

 A. Yes, I believe we all talked about it in terms of robbing
 Peter to pay Paul.

 Q. And was there -- did she ever dispute or say well, at that

 - 23 -
 CROWELL V. CROWELL

 Opinion of the Court

 point well, when did that -- he’s a shareholder, he can take
 what he wants to take, that’s his business, not mine?

 A. No.

 As the foregoing testimony and other examples from the record demonstrate,

the trial court was not, as plaintiff contends, “classif[ying] and distribut[ing] the debts

of private corporations.” Rather, competent evidence in the record shows that the

trial court was properly classifying and distributing marital debt: the trial court

found that defendant took advantage of his position as a stockholder in various

companies to borrow money which was used for the purpose of funding his and

plaintiff’s extravagant lifestyle. Indeed, most of the loan proceeds can be traced to

deposits made directly into the parties’ personal bank accounts. Accordingly, the trial

court had authority and jurisdiction to distribute to the parties the debts owed to the

companies as marital debt. Plaintiff’s argument is overruled.

 V

 Plaintiff argues the trial court erred by creating a distributive award without

finding that the statutory presumption of an in-kind distribution had been rebutted.

Specifically, plaintiff contends that it failed to make findings of fact to justify a

distributive award. We disagree.

 “[I]t shall be presumed in every action that an in-kind distribution of marital

or divisible property is equitable.” N.C.G.S. § 50-20(e). “This presumption may be

rebutted by the greater weight of the evidence, or by evidence that the property is a

 - 24 -
 CROWELL V. CROWELL

 Opinion of the Court

closely held business entity or is otherwise not susceptible of division in-kind.” Id.

Therefore, “in equitable distribution cases, if the trial court determines that the

presumption of an in-kind distribution has been rebutted, it must make findings of

fact and conclusions of law in support of that determination.” Urciolo v. Urciolo, 166

N.C. App. 504, 507, 601 S.E.2d 905, 908 (2004) (citing Heath v. Heath, 132 N.C. App.

36, 38, 509 S.E.2d 804, 805 (1999)). “In order to rebut the presumption of an in-kind

distribution, the equitable distribution judgment must contain a finding, supported

by evidence in the record, that an in-kind distribution would be impractical.” Wirth

v. Wirth, 193 N.C. App. 657, 669, 668 S.E.2d 603, 611 (2008) (emphasis added)

(citations omitted).

 In the instant case, the trial court concluded that “[i]n order to accomplish the

equitable distribution Plaintiff/Wife is required to pay a distributive award of Eight

Hundred Twenty Four Thousand Two Hundred Ninety Four Dollars and no/100

($824,294).” This conclusion was preceded by extensive findings of fact regarding

distributional factors required to be considered per N.C. Gen. Stat. § 50-20(c), which

indicate and detail the reasoning behind the trial court’s conclusion—albeit an

inferred one—that an in-kind distribution would be “impractical”:

 (1) The income, property, and liabilities of each party at the
 time the division of property is to become effective. Neither
 party is employed. Plaintiff/Wife receives social security, a
 pension, and she lives with her daughter (who could and
 should assist in the sharing of her living expenses).
 Defendant/Husband receives social security, a salary of

 - 25 -
 CROWELL V. CROWELL

 Opinion of the Court

$60,000 (as compensation for his service as Chairman of
the Board), income from one trust, and one oil royalty. As
a result of this equitable distribution Defendant/Husband
will have more debt than property and Plaintiff/Wife will
have to liquidate her property to pay the distributive award.

....

(3) The duration of the marriage and the age and physical
and mental health of both parties. The parties were
married for 15 years and were in their fifties when they
married. Defendant/Husband is in his mid-seventies[,] has
suffered a serious heart attack[,] and now suffers from
Alzheimer’s disease. He will not be in a condition to seek
outside employment again in his life and the likelihood of
his needing increased medical attention in the coming
years is good. Plaintiff/Wife is in her mid-seventies and in
good health. She is not working now but that is by choice.
She is taking classes to become a Guardian Ad Litem.

....

(5) The expectation of pension, retirement, or other
deferred compensation rights that are not marital
property. Plaintiff/Wife has a small separate retirement
plan. Defendant/Husband may receive distributions as a
result of his shared ownership in a number of Companies.

....

(8) Any direct contribution to an increase in value of
separate property which occurs during the course of the
marriage. Defendant/Husband contributed time, money
and resources to Plaintiff/Wife’s separately owned real
estate.

(9) The liquid or nonliquid character of all marital property
and divisible property. Neither party has any liquid
marital property left. Plaintiff/Wife spent her liquid assets
on her attorney in this case.

 - 26 -
 CROWELL V. CROWELL

 Opinion of the Court

 ....

 (11) The tax consequences to each party, including those
 federal and State tax consequences that would have been
 incurred if the marital and divisible property had been sold
 or liquidated on the date of valuation. The trial court may,
 however, in its discretion, consider whether or when such
 tax consequences are reasonably likely to occur in
 determining the equitable value deemed appropriate for
 this factor. Defendant/Husband is going to owe substantial
 taxes as a result of the stock he sold to pay down marital
 debt. Plaintiff/Wife paid taxes as a result of investment
 assets she liquidated after the date of separation.

 (12) Any other factor which the court finds to be just and
 proper. There was no choice but to distribute all debts to
 Defendant/Husband in [t]his case which results in a heavy
 burden he may never be able to pay before his death and a
 distributive award owed by Plaintiff/Wife that she may
 never be able to pay before her death.

(Emphasis added).

 While the trial court did not specifically make a finding which stated that an

equitable distribution of the marital property in-kind would be impractical, see id.,

the trial court’s many findings of fact, especially those regarding the non-liquid

character of the parties’ assets, are sufficient to permit appropriate appellate review

of this issue, see Plummer v. Plummer, 198 N.C. App. 538, 543, 680 S.E.2d 746, 750

(2009) (“[T]he degree of specificity required in a court order pertaining to equitable

distribution cannot be established with scientific precision. However, the court’s

findings of fact must be ‘sufficiently specific to allow appellate review.’ ” (alteration

 - 27 -
 CROWELL V. CROWELL

 Opinion of the Court

in original) (internal citation omitted) (quoting Rosario v. Rosario, 139 N.C. App. 258,

267, 533 S.E.2d 274, 279 (2000)). Because the trial court’s findings of fact are

“sufficiently specific to allow appellate review,” see Rosario, 139 N.C. App. at 267, 533

S.E.2d at 279 (citation omitted), we conclude that they support its distributive award,

and the trial court did not abuse its discretion in ordering plaintiff to pay a

distributive award of $824,294.00. Plaintiff’s argument is overruled.

 VI

 Lastly, plaintiff argues the trial court erred in ordering the liquidation of

separate property to satisfy the court’s distributive award. Specifically, plaintiff

argues the “trial court has no authority to distribute separate property[.]” As this is

a mischaracterization of what the trial court did, we disagree.

 Generally, “[f]ollowing classification, property classified as marital is

distributed by the trial court, while separate property remains unaffected.” McLean

v. McLean, 323 N.C. 543, 545, 374 S.E.2d 376, 378 (1988) (emphasis added) (citing

Hagler v. Hagler, 319 N.C. 287, 289, 354 S.E.2d 228, 232 (1987)). As stated in Section

I, supra, in ordering the liquidation of plaintiff’s separate property, it was not

distributing that property, but rather “considering” it in making its other

distributions, particularly the distribution of the majority of the marital debt to

defendant and ordering plaintiff to pay a distributive award. See Young, 185 N.C.

 - 28 -
 CROWELL V. CROWELL

 Opinion of the Court

App. at 648, 649 S.E.2d at 474 (noting that the trial court is required to “consider the

separate property in making a distribution of the marital property”).

 “The trial court is required to make findings as to whether the defendant has

sufficient liquid assets from which he can make the distributive award payment.”

Urciolo, 166 N.C. App. at 507, 601 S.E.2d at 908 (citing Embler v. Embler, 159 N.C.

App. 186, 188–89, 582 S.E.2d 628, 630 (2003)). In the instant case the trial court did

just that, and in concluding that plaintiff is “required to pay a distributive award of

[$824,294.00]” to defendant, the trial court found as follows:

 [Plaintiff] [does not have] the means and ability to pay this
 amount in full. The Court finds that she has the ability to
 pay the distributive award only as follows:

 ....

 b) 14512 Myer’s Mill & 14212 Stewart’s Bend:
 Plaintiff/Wife shall be entitled to keep 14512 Myer’s Mill so
 that she may continue to reside there. Plaintiff/Wife will
 sell 14212 Stewart’s Bend and pay the net proceeds to
 Defendant/Husband.

 c) 14228 Stewart’s Bend: Plaintiff/Wife can obtain a deed
 to this house back from Mr. Kirby, sell the property and
 distribute the net proceeds to Defendant/Husband or she
 can have Mr. Kirby pay to Defendant/Husband $90,000
 which represents the majority of equity he gained during
 the fraudulent “gift/transfer” to him of this property.

(Emphasis added).

 Accordingly, where the trial court was properly considering—not

distributing—plaintiff’s separate property in distributing the marital estate,

 - 29 -
 CROWELL V. CROWELL

 Opinion of the Court

specifically considering plaintiff’s ability to pay a distributive award to defendant, the

trial court did not abuse its discretion in ordering plaintiff to liquidate separate

property in order to pay the distributive award. Defendant’s argument is overruled.

 The equitable distribution judgment and order is

 AFFIRMED IN PART; VACATED IN PART.

 Judge ARROWOOD concurs.

 Judge MURPHY concurs in part and dissents in part in a separate opinion.

 - 30 -
 No. COA17-164 – Crowell v. Crowell

 MURPHY, Judge, concurring in part and dissenting in part.

 I concur in the portions of the Majority’s opinion concluding: (1) Gentry Kirby

(“Kirby”) was a necessary party for the alternate money judgment entered against

him; (2) the trial court properly distributed certain marital debts to Defendant; and

(3) the trial court made proper findings for a distributive award. However, I

respectfully dissent in regard to the Majority’s determination that neither CKE

Properties, Inc. (“CKE”) nor Kirby were otherwise necessary parties.7

 “A ‘necessary party’ is a party that ‘is so vitally interested in the controversy

involved in the action that a valid judgment cannot be rendered in the action

completely and finally determining the controversy without its presence as a party.’ ”

Geoghagan v. Geoghagan, ___ N.C. App. ___, ____, 803 S.E.2d 172, ___ (2017) (quoting

Booker v. Everhart, 294 N.C. 146, 156, 240 S.E.2d 360, 365-66 (1978)). “This Court

has also described a necessary party as ‘one whose interest will be directly affected

by the outcome of the litigation.’” Id. at ___, 803 S.E.2d at ___ (quoting Begley v.

Emp’t Sec. Comm., 50 N.C. App. 432, 438, 274 S.E.2d 370, 375 (1981)).

 We recently addressed necessary parties in an equitable distribution action in

Geoghagan. ___ N.C. App. ___, 803 S.E.2d 172. In that case, plaintiff and defendant

owned an incorporated business, which was the sole member of four limited liability

 7 Although the Majority concluded Kirby was a necessary party in regard to the alternate
money judgment entered against him, the Majority concluded Kirby was not a necessary party in
regard to the transfer of deed for his property at 14228 Stewart’s Bend.
 CROWELL V. CROWELL

 MURPHY, J., concurring in part and dissenting in part.

companies (subsidiary LLCs). Id. at ___, 803 S.E.2d at ___. Plaintiff “acted as the

manager of each of the subsidiary LLCs of which [the corporation] was a member.”

Id. at ____, 803 S.E.2d at ___. The trial court distributed all of the shares of the

corporation to plaintiff and ordered plaintiff to pay a distributive award. Id. at ___,

803 S.E.2d at ___. Additionally:

 [a]s the court had distributed [the corporation] to
 [p]laintiff, it ordered [p]laintiff to make “good faith efforts
 to substitute himself for [defendant] as guarantor of all
 debts and obligations of [the corporation],” and further
 ordered [p]laintiff to “indemnify [defendant], and hold her
 harmless, from all liability relating to” a bank loan made
 to [the corporation], all [of the corporation’s] leases, all
 agreements between [the corporation] and its various
 vendors, and all other debts and liabilities of [the
 corporation].

Id. at ___, 803 S.E.2d at ___. The trial court further ordered the corporation to not

pay plaintiff any salary, bonuses, or other compensation above a sum certain until

plaintiff paid the distributive award. Id. at ___, 803 S.E.2d at ___.

 On appeal, plaintiff argued the corporation and subsidiary LLCs were

necessary parties. Id. at ___, 803 S.E.2d at ___. This Court stated “[w]hile couched

in terms suggesting the equitable distribution order was directed at [p]laintiff, the

trial court clearly restricted the ability of [the corporation] and the subsidiary LLCs

to act.” Id. at ___, 803 S.E.2d at ___. Accordingly, we held the corporation and

subsidiary LLCs were necessary parties and vacated and remanded the order. Id. at

___, 803 S.E.2d at ___.

 2
 CROWELL V. CROWELL

 MURPHY, J., concurring in part and dissenting in part.

 The Majority concludes the trial court did not distribute the property at 14212

Stewart’s Bend and 14228 Stewart’s Bend as part of the marital estate and, instead,

merely considered the separate property in distributing the marital estate. I

disagree. Instead of considering the separate property, the trial court improperly

restricted the abilities and rights of CKE and Kirby. Pursuant to the equitable

distribution judgment and order, CKE must list the property at 14212 Stewart’s Bend

and pay proceeds to Defendant. Additionally, Kirby must transfer title of 14228

Stewart’s Bend to Plaintiff, although the trial court determined this property was

Plaintiff’s separate property. While, initially, the trial court seemingly only

considered the 14228 Stewart’s Bend property as part of the distributive award, the

trial court concluded by ordering Plaintiff to list the property and take all efforts to

sell the home for fair market value. Based on these orders, CKE’s and Kirby’s

“interest[s] will be directly affected by the outcome[.]” Begley, 50 N.C. App. at 438,

274 S.E.2d at 375 (citation omitted).

 While I agree Nicks v. Nicks, 241 N.C. App. 487, 774 S.E.2d 365 (2015) and

Dechkovskaia v. Dechkovskaia, 232 N.C. App. 350, 754 S.E.2d 831 (2014) govern when

the trial court distributes property owned by a third party as marital property, and

that is not the distribution issue at hand here, nonetheless, the trial court entered an

equitable distribution judgment and order affecting the rights and interests of parties

not joined in the action.

 3
 CROWELL V. CROWELL

 MURPHY, J., concurring in part and dissenting in part.

 This error is exemplified by the Majority’s analysis of the transfers to CKE and

Kirby under Chapter 39, Article 3a of the North Carolina General Statutes, the

Uniform Fraudulent Transfer Act, (“UFTA”) (now the Uniform Voidable Transactions

Act). The Majority goes to great length to illustrate that the transfers fall within the

UFTA, and I agree with the analysis contained therein, but the Majority does not cite

a single case where a transfer was rescinded without the transferee being a party to

the litigation. By requiring non-parties to act and effectively rescind the transfers,

the trial court has permanently barred CKE and Kirby from raising any defenses or

protections they may have under N.C.G.S. §§ 39-23.8 (2015) or 39-23.9(3) (2015).

More troubling is the fact that if CKE or Kirby had been properly joined, they could

have exercised their rights to a jury trial in accordance with Article I, § 25 of the

North Carolina Constitution. N.C. Const. art. I, § 25.

 CKE and Kirby are necessary parties to this action, and as in Geoghagan, the

trial court lacked the power to require their action or affect their rights without first

being joined as parties. The trial court’s error is compounded by the fact that it

prevents non-parties from raising defenses and protections under the UFTA or

exercising their constitutional rights to a jury trial. Accordingly, I would vacate and

remand the trial court’s order for further proceedings that do not require the actions

of or affect the rights of non-parties, or for joinder of the necessary parties.

 4